434 So.2d 1340 (1983)
Joe B. WILLIAMS
v.
STATE of Mississippi.
No. 53723.
Supreme Court of Mississippi.
July 20, 1983.
Rehearing Denied August 10, 1983.
*1341 Carroll Rhodes, Hazlehurst, for appellant.
Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and HAWKINS and DAN M. LEE, JJ.
HAWKINS, Justice, for the Court:
Joe B. Williams appeals from the Circuit Court of Copiah County his conviction of manslaughter by culpable negligence and sentence of fourteen (14) years in the custody of the Mississippi Department of Corrections. We affirm.

FACTS
Wiley Brown got off from work after 11:00 p.m. on Friday night, September 11, 1981. He was driving home in a two-door Ford sedan on an asphalt surfaced highway called the "Mop Plant Road," just beyond the city limits of Hazlehurst. As he was driving on an uphill grade which curved to his right, his car ran out of gas.
He was backing his car down the hill to park in a safe spot when a car came over the hill from the opposite direction, and in the center of the highway. Brown testified that this car forced him into the opposite ditch on the left side of the highway. The other automobile was a Plymouth, and according to Brown it was speeding, and was the same car involved in the accident which subsequently occurred.
A friend stopped and carried Brown for help. He reported the incident of the other car to the City Police Department of Hazlehurst, and secured a wrecker service to pull him out of the ditch. The wrecker, operated by Calvin R. Newman, drove to the scene and pulled Brown's automobile from the ditch. The wrecker pulled the car to a position in which its front right end was approximately two to three feet on the asphalt surface, with the remainder of the car angling onto the left shoulder.
*1342 The wrecker left, but returned in a few minutes. On its return, Kenny Newman was with his brother Calvin. Brown was informed by Calvin Newman that he had been unable to get any gasoline, and they would have to tow him into town.
The wrecker was parked in front of the automobile, and chains were attached between them. According to Brown, the wrecker was completely off the road. The photographs taken following the accident indicate Brown's Ford automobile at that time was also off the highway, with the exception of two to three feet of its front right end on the asphalt surface. The asphalt surface was 24 feet wide.
According to Brown, he and Kenny Newman were between the two vehicles, and Calvin Newman was at the front end of the wrecker, on the driver's side, when a Plymouth automobile driven by the defendant Joe B. Williams came from the opposite direction over the hill at a high rate of speed, and went off the left side of the highway in the direction of the wrecker and Brown's car.[1]
The Plymouth automobile drove into the left side of the Ford automobile, damaging it on the left side, and came to rest with the left front end of the Plymouth driven into the left rear end of the Ford.
Brown and Kenny Newman escaped injury. Brown noticed Calvin Newman's cap fly into the air as the Plymouth came at the two vehicles.
Following the collision, Williams remained in his car, and Brown and Kenny Newman looked for Calvin Newman, but were unable to locate him. Brown testified that Williams was drunk.
Upon the arrival of an ambulance, Calvin Newman's body was located in a muddy hole of water off the highway. This mud hole of water, a few feet in diameter, was approximately six to eight feet beyond the front end of Williams' Plymouth automobile after it came to rest, and approximately 38 feet from the location of Newman's cap. Attempts to restore breathing or a heart beat to Newman were unsuccessful.
Photographs of the highway from the direction Williams was driving the Plymouth show a highway sign indicating a curve and a clear visibility beyond this of several hundred feet. Deputy Sheriff Thomas Quarles, the investigating officer for the accident, later parked his car at the same location of Brown's automobile, and testified the car was 173 steps, or approximately 519 feet, beyond the curve sign. Both the automobile and the curve sign are clearly visible in the photographs.[2] Quarles also testified the car tracks at the scene of the accident indicated that Williams' car traveled approximately 75 feet after leaving the highway.
Brown testified that just before the accident the headlights and color light on the wrecker, and the signal lights on his Ford, were all on.
Dr. Lamar Burrow, a pathologist in McComb, performed an autopsy on the body of Calvin Newman and determined his death was caused by drowning. His body had some bruises and abrasions, but there were no broken bones.
Williams was arrested at the scene of the accident by Quarles for reckless driving and driving while intoxicated. Andy Matthews, city policeman of Crystal Springs, gave a breath test to Williams upon an intoxilyzer, and determined Williams had a blood alcohol content of .24 percent. A blood sample was also taken from Williams, which was determined by the Mississippi Crime Laboratory to contain .18 percent ethyl alcohol by weight.
Williams was indicted by the Copiah County Grand Jury for homicide by culpable negligence and following trial, was convicted *1343 and sentenced to fourteen years with the department of corrections.
At the trial, Williams testified, contrary to Brown, that the wrecker blocked the left lane of the highway, and the Brown automobile blocked the right lane, in the direction he was headed. He acknowledged he could see the yellow light on the wrecker, but testified none of the lights on the two vehicles were on.
Williams also acknowledged he had been drinking beer, but not enough to be intoxicated.

LAW
Addressing first the assignments of error that he was entitled to a directed verdict, and that the verdict of the jury was against the overwhelming weight of the evidence, we find them without merit. There was certainly sufficient evidence for the jury to conclude that this accident could not have occurred without the highest degree of negligence.[3] Moreover, it was the type of accident which would be somewhat difficult to envision in the absence of some kind of disability on the part of the driver, in this case, intoxication.
As to the accident being the cause of death, while the circumstances of this death were most unusual, there was nothing improbable about Brown's version of what occurred. From Brown's statement that the last he saw of Newman was his cap being thrown into the air, the jury would have been justified in concluding that Newman was carried on the Williams' vehicle until it crashed and stopped at the rear of the Ford, and was then thrown the remaining seven or eight feet into the muddy hole of water where he drowned.
Did the trial judge err in admitting into evidence the result of the breath test?
Andy Matthews, a city policeman of Crystal Springs, administered the breath test for alcohol content in Williams' blood. Matthews had received training at the Mississippi Highway Safety Patrol under the Mississippi Department of Public Safety on the use of the intoxilyzer and its predecessor machine, the intoximeter, and had taken a written examination on which he made a correct score of more than 85 percent. He held a permit from the Department of Public Safety to conduct tests on this machine. He was fully qualified to administer this test under our statute. See Miss. Code Ann. § 63-11-19 (Supp. 1982).
In administering the test Matthews precisely followed the procedure recommended by the Department of Public Safety and conducted the examination on a machine that had been checked for accuracy only two days previously. There was a checklist of steps to take in administering this test, which the record shows Matthews scrupulously followed.
The circuit judge therefore quite properly admitted the result of this test into evidence. The testimony was competent for consideration by the jury.
Upon this appeal, however, Williams attacks the competency of this evidence by charging that Matthews did not determine that Williams had nothing in his mouth prior to taking the test. For this proposition he cites a State of Washington case, State v. Baker, 56 Wash.2d 846, 355 P.2d 806 (1960). However, Matthews fully complied with all procedures recommended by the Department of Public Safety, thus, the result of the test was competent. Any claim by Williams would only go to the weight of the evidence. Moreover, Williams did not claim that any foreign matter was in his mouth.[4]
This test revealed Williams had considerably more than .10 percent alcohol content in his blood, the statutory demarcation between a presumption of whether Williams was driving under the influence of intoxicating liquor. Miss. Code Ann. § 63-11-39 (Supp. 1982).
*1344 Did the circuit judge err in admitting into evidence the result of the blood test?
On this assignment Williams takes a different tack, and charges that since his arrest was illegal, there was no authority to remove blood and test it.
Deputy Sheriff Quarles testified he was notified of the wreck just after 2:00 a.m., and promptly drove to the scene. Upon arriving he saw the position of the vehicles, the damage to each, an ambulance, and attendants attempting to revive Newman. He further observed Williams sitting under the steering wheel, and smelled a strong odor of alcohol on his breath. Williams' speech was slurred, and when Quarles got him out of the car, he further noticed that Williams staggered and was unsteady on his feet. He then arrested Williams and took him to jail on a charge of reckless driving and driving under the influence of intoxicating liquor.
Prior to the removal of the blood, Quarles had gone to the hospital and learned that Newman was dead. Subsequent to this, Williams was brought to the hospital from the jail and blood was extracted. At that time Williams was also examined and treated for minor injuries.
Miss. Code Ann. § 99-3-7 (1972), authorizes arrests for a misdemeanor without a warrant when committed in the presence of an officer or private person. Does this require the commission of the offense to be in the actual view of the officer, or is "presence" satisfied under the circumstances of this case?
In Harris v. State, 216 Miss. 895, 63 So.2d 396 (1953), overruled on other grounds, Strode v. State, 231 So.2d 779 (Miss. 1970), we held that a misdemeanor is being committed in the presence of an officer when he acquired knowledge thereof though his senses. In Arnold v. State, 153 Miss. 299, 120 So. 731 (1929), the officer smelled alcohol on the defendant's breath and observed a bottle which he believed to contain whiskey in the car. He arrested the defendant for unlawful possession of whiskey, and we held that arrest lawful.
The basis for the requirement that the offense be committed in the presence of the arrestor is to avoid mistake. Quarles observed every circumstance which would fully justify his arrest of Williams for either reckless driving or driving under the influence of intoxicating liquor with the exception of having actually observed him driving. He had every reason to believe the Plymouth had been driven recklessly and that Williams was the driver. He had very good reason to believe that Williams was intoxicated. The physical facts surrounding this accident, and the facts that became apparent to the sight and smell of Quarles, were sufficient under the particular facts of this case to hold that both offenses were committed in the presence of Quarles.
We recognize the importance in the requirement that, for a lawful arrest to be made without a warrant, the commission of the offense be in the arrestor's presence, but our holding here does not relax this rule or the rationale therefor.
We believe the modern view authorizes the arrest of a person for driving while intoxicated in certain circumstances even though the officer first discovers the offender after the vehicle has come to rest. This is such a case. Cf. Gregg v. State, 374 So.2d 1301 (Miss. 1979). See, e.g., Halko v. State, 54 Del. 180, 175 A.2d 42 (1961); Commonwealth v. Kloch, 230 Pa.Super. 563, 327 A.2d 375 (1974). It should also be noted that other factors, e.g., admission of the intoxicated arrestee that he was the driver or identification by a witness of the intoxicated arrestee as the driver, can satisfy the presence requirement.
In addition to this, however, prior to the time the blood test was administered, Officer Quarles had learned Newman was dead, and he then had the right to detain Williams on the charge of culpably negligent homicide.
Finally, Williams gave a written consent for the sample of blood to be taken from his body. Although he testified at the trial he did not fully understand this written consent, this presented a conflict between the testimony of Williams and the officers, and we cannot say the trial judge *1345 abused his discretion in admitting the evidence.
Williams also argues the taking of his blood amounted to forcing self-incrimination in violation of his Fifth Amendment rights. There was no violation of any Fifth Amendment right, however, in removing a blood sample from his body. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Gregg v. State, supra.
Finally, Williams complains of one instruction given the state, and another refused him. We have carefully examined all instructions given, and all refused, and it is manifest that the jury was clearly and properly instructed on the charge against Williams. An abundance of instructions were given on behalf of the state and the defense, fully charging the jury. The negligence of Williams in this case was of such nature and degree to authorize the jury in finding that this intoxication was a proximate cause of the accident. This was not a case of minor, or "simple" negligence.
Williams' conviction and sentence are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, PRATHER and ROBERTSON, JJ., concur.
DAN M. LEE, J., not participating.
NOTES
[1] We are unable to determine from this record the direction of the highway at the scene of the accident.
[2] Counsel for Williams in his brief and oral argument aver visibility was only fifty feet. This is quite contrary to the record. Brown testified it was about "40 to 50 feet" from or to the "hill." He never testified concerning the distance of visibility from the direction Williams was traveling.
[3] The jury could have reached this conclusion whether it accepted the testimony of Brown and Quarles as to the location of the vehicles, or the incredible testimony of Williams thereasto.
[4] He did say that in his mouth "I had blood and my teeth."