603 So.2d 323 (1992)
Kenneth W. GOFORTH
v.
CITY OF RIDGELAND, State of Mississippi.
No. 89-KA-00056.
Supreme Court of Mississippi.
June 10, 1992.
Dissenting Opinion June 17, 1992.
*324 Minor F. Buchanan, Jackson, for appellant.
Steven H. Smith, Richard B. Schwartz, Schwartz & Associates, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from a conviction for driving under the influence of intoxicating liquors and presents important questions regarding our law's procedural response to the menace of drunk driving. Defendant attacks with vigor the use of an intoxilyzer to test his sobriety and provide evidence against him. We have considered defendant's points with care and find none requiring reversal.

II.

A.
On December 12, 1986, Kenneth W. Goforth, age twenty-nine, had been on a business trip to Senatobia, Mississippi. Goforth lives in Ridgeland and was employed as an insurance sales representative. Upon returning to the Jackson area, Goforth went to his home in Ridgeland for a time and then drove to the 1001 Restaurant and Lounge on County Line Road, where he planned to meet a business acquaintance. Goforth arrived at the lounge at 9:30 or 9:45 p.m., but his friend never appeared. While there, he says he consumed two brandies and left to go home about midnight.
Goforth says that he got into his 1975 280Z automobile and drove easterly down County Line Road to the intersection of Old Canton Road.
I was going to take a left onto (Old Canton Road) and I went way too wide *325 and there's a drop-off, if you all have ever been on there, there's a drop-off about like this and the front wheels went into the mud and I gave it some gas hoping it would come back out, but the car would not come back over the thing, it hit the mud and slapped up against the wall.
He said he was traveling about 30 to 35 miles per hour, and the road was wet.
After his car came to a stop, Goforth got out and found he was stuck in the mud, "like that Yazoo clay stuff"  very sticky. Two men came up and sought to extricate Goforth from his mess. A few minutes later, Officer William R. Grissett with the Ridgeland Police Department pulled up, and the civilian Samaritans took their leave. Grissett asked Goforth whether he had been drinking, and Goforth told him about the two drinks.
Officer Grissett has a different view. He was on patrol the night of December 12, 1986, when he came upon the motor vehicle accident on Old Canton Road. He noticed the car was sitting on top of one roadway sign, and two or three others had been knocked down. Grissett found Goforth unstable on his feet, with a strong smell of alcohol about him, that he was slurring his speech, and his eyes were dilated. In short, Grissett thought Goforth was drunk.
Sergeant James Stepp, also with the Ridgeland Police Department, appeared at the accident scene shortly after Grissett talked with Goforth. Officers Grissett and Stepp arrested Goforth  the charge, driving under the influence of intoxicating liquors  and proceeded to handcuff Goforth and take him into custody. Part of the reason for handcuffing Goforth was to make sure he did not take anything by mouth for twenty minutes before the intoxilyzer test was given.
Officer Kenneth David Craft, an RPD dispatcher, administered the intoxilyzer test to Goforth that night. The test was timed at 1:20 a.m., twenty minutes after Officer Grissett called in that he was enroute to the station with Goforth. Craft followed normal testing procedures, and found Goforth to have .25 blood alcohol level.

B.
On February 5, 1987, Goforth stood trial in the Municipal Court of the City of Ridgeland, Mississippi, on a charge of driving under the influence of intoxicating liquors, Miss. Code Ann. § 63-11-30, et seq., and was found guilty. Goforth appealed to the County Court of Madison County, Mississippi, which, on June 10-11, 1987, afforded him a trial de novo which again resulted in a judgment of guilt. Goforth then appealed to the Circuit Court of Madison County, where, on September 12, 1988, the County Court judgment was affirmed.
Invoking the procedures set forth in Miss. Code Ann. § 11-51-81 (1972), Goforth represented to the Circuit Court that his case necessarily presented constitutional questions and that he should be allowed an appeal to the Supreme Court of Mississippi. On October 10, 1988, the Circuit Court entered an order certifying "that a constitutional question does in fact exist for determination by the Supreme Court of the State of Mississippi."
Goforth now presents his appeal to this Court.

III.
Our jurisdiction is a function of statute, and because this case originated in the Municipal Court of the City of Ridgeland, we may not hear it unless
a constitutional question be necessarily involved and then only upon the allowance of the appeal by the circuit judge... .
Miss. Code Ann. § 11-51-81 (1972). Of late we have reiterated that we take seriously these jurisdictional restrictions. See, e.g., Green v. City of Clinton, 588 So.2d 842 (Miss. 1991); Sumrall v. City of Jackson, 576 So.2d 1259 (Miss. 1991); Jones v. City of Meridian, 552 So.2d 820 (Miss. 1989); Barrett v. State, 491 So.2d 833 (Miss. 1986); Alt v. City of Biloxi, 397 So.2d 897 (Miss. 1981).
*326 Goforth's appeal presents questions whether his rights under Miss. Const. Art. 3, § 23 (1890), were offended when Officers Grissett and Stepp seized him and arrested him without a warrant and whether the trial court denied his right to compulsory process, Miss. Const. Art. 3, § 26 (1890), when it quashed his subpoena duces tecum for the intoxilyzer machine. The City of Ridgeland makes no challenge to our jurisdiction, nor to the certificate of the Circuit Court. We proceed.
Once an appeal is before us under Section 11-51-81, it is here for all purposes. Our jurisdiction extends to "appeals," which are entire cases, and not merely isolated or discrete issues therein. On the other hand, we think it a fair interpretation of the statute that, within our discretion, we may decline to consider non-constitutional issues and restrict our review to issues of general importance in the administration of justice, or to protect a party from substantial and irreparable injury. See Jones v. City of Meridian, 552 So.2d 820, 825 (Miss. 1989) (considering and adjudging non-constitutional issues).

IV.
Goforth argues that the trial court erred when it received into evidence the result of the intoxilyzer test, reflecting .25 percent by weight of volume of alcohol in his blood. He grounds his point on the claim his arrest contravened his right to be secure from unreasonable seizure, citing Miss. Const. Art. 3, § 23 (1890). The test is said to have been the tainted fruit of the arrest.
Goforth's principal charge that his arrest was illegal, however, emanates from the familiar provisions of Miss. Code Ann. § 99-3-7 (1972), implementing the constitutional guarantee:
An officer or private person may arrest any person without warrant, for ... a breach of the peace threatened or attempted in his presence.
He relies as well upon Rule 1.02, Miss. Unif.Crim.R.Cir.Ct.Prac. (1982), which provides:
An officer may arrest any person without a warrant .. . [f]or ... breach of the peace, including those threatened or attempted, committed in the presence of an officer.
It is well settled that misdemeanors are breaches of the peace, and these rules empower officers to make arrests of persons who commit misdemeanors in their presence. Goforth's argument is that Officer Grissett did not observe him driving and, in consequence, had no authority to arrest him sans a warrant.
Williams v. State, 434 So.2d 1340, 1344 (Miss. 1983), speaks to the point. A deputy sheriff found the defendant under the wheel of a car at the scene of an accident and observed substantial indicia of drunk driving and placed the defendant under arrest. On appeal, we recognized that the better view of the law
authorizes the arrest of a person for driving while intoxicated in certain circumstances even though the officer first discovers the offender after the vehicle has come to rest.
Williams v. State, 434 So.2d at 1344; see also, Jones v. State, 461 So.2d 686, 695 (Miss. 1984), and Gregg v. State, 374 So.2d 1301 (Miss. 1979). Significantly, Goforth admitted to Officer Grissett he had been driving the automobile. Williams, 434 So.2d at 1344. Beyond this, Goforth was publicly intoxicated in the presence of Officers Grissett and Stepp and, as well, of the two men who had first stopped to help. Miss. Code Ann. § 97-29-47 (1972); Gregg, 374 So.2d at 1303. To be legal, the warrantless arrest does not have to have been on the charge ultimately brought. Jones, 461 So.2d at 695; State for Use of Kelley v. Yearwood, 204 Miss. 181, 194, 37 So.2d 174, 176 (1948).
On the record presented, Goforth's arrest and seizure were legal. No taint attaches to the subsequent intoxilyzer test.

V.
Substantial portions of the transcript of proceedings reflect Goforth's attack on the intoxilyzer machine employed by the City of Ridgeland law enforcement authorities. *327 Goforth has struggled mightily throughout to prove that its report of a .25 blood alcohol level was, in a word, unreliable. As a part of his attack, Goforth sought to produce the intoxilyzer machine into court and to conduct a demonstration. The trial court denied this request, largely on grounds of untimeliness, but Goforth presses the point on appeal, arguing violation of his right under Miss. Const. Art. 3, § 26 (1890), to be confronted by the witnesses against him and to have compulsory process for obtaining witnesses in his favor.
Seven days before trial, Goforth caused to be issued for Chief of Police Harold Acy a subpoena duces tecum requiring him to bring the intoxilyzer machine to court for Goforth's trial. The City moved to quash the subpoena.[1] The trial court granted the motion but ordered the City to allow Goforth the opportunity to run a test in the police station where the intoxilyzer machine was situated. Much of the dispute at trial centered on the dangers of damage to the machine if it were taken from the police station, the inconvenience to the City in that officers would not be able to use it while it was at court. The trial court also found Goforth had failed to show the test he proposed would substantially replicate the circumstances of the evening of December 12-13, 1986.
We approach this issue with care. Section 26 of our Constitution provides that an accused of right may have compulsory process for obtaining witnesses in his favor, but this does not mean he may subpoena anybody or anything as he pleases. He must show the evidence sought would arguably be "in his favor." Before we may reverse, we must find that the accused at some point provided a proper predicate for admissibility. Cf. Heidel v. State, 587 So.2d 835, 845-46 (Miss. 1991); West v. State, 553 So.2d 8, 20-21 (Miss. 1989). That the trial court may in its discretion have enforced the subpoena is no reason why we must reverse for its failure to do so.
As the report of an intoxilyzer test is a powerful weapon in the hand of the prosecution, the accused is entitled to a fair and reasonable opportunity to confront and rebut it. The record does not reflect Goforth was denied this opportunity. It is certainly clear that Goforth wanted the machine brought to the courthouse. On the other hand, he has provided us nothing in this record which shows that he and his expert witness would have been unable to do what they needed to do in order properly to defend the case by examining and testing the machine at the police station. He certainly made no showing he could reproduce the conditions of the night in question, nor offer relevant evidence that might have aided his cause. Moreover, the trial judge was hardly out of bounds in considering that moving the machine to the courthouse would be substantially disruptive and inconvenient to the City of Ridgeland law enforcement authorities.
On the present record, we find that the Circuit Court was within its discretionary authority[2] in the premises. We note that Goforth could have gone to the police station during the noon recess or overnight on June 10 and made his examination or test of the machine. He made no request for additional time or for a continuance.

VI.
Finally, Goforth urges that the Court erred when it refused to allow his expert witness, Eric Rommerdale, to give his opinion regarding the impact of a four-tooth temporary partial bridge in Goforth's mouth upon the intoxilyzer test.
Rommerdale is Chief of Laboratory Technology at the University of Mississippi School of Dentistry, and qualified as an expert witness regarding the property of bridges and the manner of fit of temporary bridges in the mouth. He has national *328 certification in complete dentures, removal of partial dentures, and in crowns and bridges. He was accepted as an expert witness in the tendered field, although he has no degree in biology, chemistry, or forensic science.
The context of Rommerdale's proffered testimony was that Goforth had a temporary partial bridge on his front four teeth at the time in question, and he sought to elicit an expert opinion from Rommerdale that residual brandy could have been in Goforth's mouth at the time of the intoxilyzer test and could have distorted the test results. Finally, the following exchange took place:
Q. Based on your knowledge, based on your teaching that you have received and based on your research in the field, and based on your work experience, Mr. Rommerdale, and I am going to give you a factual situation, a hypothetical situation, do you have an opinion as to whether or not residual alcohol would be in the mouth within an hour after consumption if a man were wearing a temporary partial bridge in his mouth?
BY MR. SMITH:
Objection, Your Honor, he is not qualified to render that opinion.
BY MR. BUCHANAN:
Your Honor, he testified that he is familiar with the properties and veracity of all of the materials, plus the fit and the fact that it traps fluid and liquids between the gums and the bridge.
BY THE COURT:
I'm going to sustain the objection to the question in the fashion in which it was asked.
MR. BUCHANAN CONTINUES DIRECT EXAMINATION:
Q. Let me give you a factual hypothetical situation. A man has a drink of brandy. Within one hour he is tested for having alcohol in his bloodstream. At the time he had that drink of brandy, he had a four-tooth temporary partial bridge on his front four teeth in his mouth at the time he had his drink of brandy and at the time he took the test. Based on your experience, on your training, taking that hypothetical situation as a fact, do you have an opinion to a reasonable scientific certainty as to whether or not it is probable that there was residual alcohol in that man's mouth when that test was taken?
BY MR. SMITH:
Same objection, Your Honor.
BY THE COURT:
I'm going to sustain the objection.
.....
BY THE COURT:
I am sustaining the objection of the prosecutor regarding the qualification of Mr. Rommerdale to render an expert opinion based upon the question asked of the witness.
Goforth then proceeded to make a proffer for the record, wherein Rommerdale testified that it was possible for the dental partial to capture alcohol. He further testified that it was reasonable for a drop of alcohol to have been trapped behind the denture.
This Court has promulgated rules of evidence for the governance of trials, and in today's context, these rules provide:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Rule 702, Miss.R.Ev.; and
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Rule 703, Miss.R.Ev.
We admonish that our trial courts take care that one who offers opinion testimony "really is an expert in the particular field at issue." Hall v. Hilbun, 466 So.2d *329 856, 875 (Miss. 1985). Still, the rules hardly admit a regimen of mechanical application. They import discretion, and we have repeatedly emphasized that, where the trial court applies the correct legal standards, we will not reverse absent an abuse of discretion. See, e.g., Thornhill v. State, 561 So.2d 1025, 1032-33 (Miss. 1989); Wyeth Laboratories, Inc. v. Fortenberry, 530 So.2d 688, 690 (Miss. 1988); May v. State, 524 So.2d 957, 963 (Miss. 1988); Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987); Hooten v. State, 492 So.2d 948, 950-51 (Miss. 1986) (Hawkins, J., dissenting). That the trial court may have admitted the testimony packs no punch, as discretion by definition suggests at least two courses the court may have pursued without reversal. Morrow v. Morrow, 591 So.2d 829, 832 (Miss. 1991); Jackson v. State, 551 So.2d 132, 139 (Miss. 1989); Burkett v. Burkett, 537 So.2d 443, 446 (Miss. 1989).
Rule 702 prescribes no freefloating test of expertise. Before a witness' "knowledge" is such that it may "assist the trier of fact to understand the evidence," it is only common sense that the witness must possess expertise on the particular issue. The question here is not whether Rommerdale was an expert in the making of dental appliances, but whether he had an specialized knowledge regarding the rather technical question of whether a partial bridge such as Goforth had in his mouth could affect the results of the intoxilyzer test. Moreover, before a qualified expert's opinion may be received, it must rise above mere speculation. Fowler v. State, 566 So.2d 1194 (Miss. 1990). What, and all, Rommerdale stated in Goforth's out-of-the-presence-of-a-jury proffer was that, hypothetically, the temporary bridge could have trapped residual alcohol. Rommerdale would merely answer that this was a "reasonable" hypothesis.
Under the circumstances, we consider that the trial court was within its discretionary authority when it sustained the objection. Expert testimony should be made of sterner stuff.

VII.
Goforth tenders no further issues that merit either discussion or reversal. See Saucier v. State, 562 So.2d 1238, 1246-47 (Miss. 1990); Morea v. State, 329 So.2d 527 (Miss. 1976).
CONVICTION OF DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY-FOUR HOURS IN CUSTODY OF THE MADISON COUNTY SHERIFF'S DEPARTMENT, AFFIRMED, WITH THE SUSPENSION OF SAID TWENTY-FOUR HOUR PERIOD OF INCARCERATION TO BE CONTINGENT UPON PROMPT PAYMENT OF THE FINE IMPOSED AND ALL COURT COSTS AND ASSESSMENTS AND SATISFACTORY COMPLETION OF THE MISSISSIPPI ALCOHOL SAFETY AND EDUCATION PROGRAM.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with written opinion to follow.
McRAE, Justice, dissenting:
That an individual may combine driving and drinking without causing serious bodily harm to another does not condone the practice. Drunk driving leads to often tragic consequences; it also carries with it serious ramifications for anyone so charged. Therefore, when an individual is charged with driving under the influence of an intoxicating liquor, whether as a misdemeanor or as a felony, he should be entitled to the same rights and protection as one charged with any other crime. Accordingly, I dissent from the majority opinion which affirms the conviction of Kenneth Goforth.
Although Goforth admitted to police that he was driving his automobile at the time he overshot a turn and became mired in mud, I disagree with the majority's contention that the alleged offense, driving while intoxicated, happened in the "presence" of an officer or private person so as satisfy the requirements of Miss. Code Ann. § 99-3-7, which authorizes arrests for a misdemeanor *330 without a warrant. In Williams v. State, 434 So.2d 1340, 1344 (Miss. 1983), we stated that "[t]he basis for the requirement that the offense be committed in the presence of the arrestor is to avoid mistake."
What did the arresting officer observe when he arrived at the scene of Goforth's mishap? Officer William R. Grissett testified that he saw two men attempting to extricate Goforth's sports car from the mud. He stated that Goforth was "unstable on his feet," that he smelled of alcohol, that his speech was slurred and that his pupils were dilated. Notably, he testified that he did not question the two Good Samaritans. Officer Ken Craft, who later administered the intoxilyzer test on Goforth testified that he noticed nothing unusual about his speech, walk or smell.
The majority relies on Williams to support its findings that there were sufficient indicia of drunk driving to find that Goforth had committed a misdemeanor in the presence of the arresting officers. However, the officers in Williams observed far more than slurred speech, the smell of alcohol, unsteady footing on muddy ground and an admission that the defendant had been driving the vehicle in question. One man was dead. Williams was sitting on the floor of his car, under the steering wheel. Williams, 434 So.2d at 1344. Two eye witnesses, one of whom had been forced off the road earlier when William's car was cruising down the center of the highway, had observed the vehicle coming at them at a high rate of speed. Id. at 1341-1342. Clearly, the arresting officer in Williams was greeted at the scene of the accident with circumstances far more clearly indicative of drunk driving than in the case sub judice.
As I read the facts, there was insufficient evidence to show that Goforth committed the offense of driving under the influence of intoxicating liquor in the presence of the arresting officers, as required to make an arrest for a misdemeanor without a warrant. Accordingly, the results of the intoxilyzer test should not have been admitted.
Our drunk driving laws and testing procedures have done much to bring to justice countless drivers whose reckless abuse of alcohol has led to tragedy. However, the same safeguards provided by our constitution to those charged with other crimes should be applicable to those arrested for drunk driving, lest injustice result.
NOTES
[1] In civil cases such subpoenas ordinarily must be served ten days before they are returnable. Rule 45(b)(3), Miss.R.Civ.P. Though cited below, the rule has no per se relevance in today's misdemeanor criminal prosecution. See Rule 4.11, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979); and Rule 1.00, Miss.Unif.Crim.R.Co.Ct.Prac. (1985).
[2] See Section VI, infra.