645 So.2d 910 (1994)
William E. FULTON
v.
CITY OF STARKVILLE.
No. 91-KA-01257.
Supreme Court of Mississippi.
November 10, 1994.
*911 Charles T. Yoste, Starkville, for appellant.
Roy E. Carpenter, Jr., Starkville, for appellee.
En Banc.
SMITH, Justice, for the Court:
William Fulton appealed from the Municipal Court of the City of Starkville to the Oktibbeha County Circuit Court his conviction of driving a motor vehicle while having greater than .10% blood alcohol level. After a jury trial in circuit court, Fulton was found guilty and fined $500 and court costs. The trial court overruled Fulton's motion for a new trial.
Fulton's sole issue on appeal is as follows:
THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE OF THE DEFENDANT'S BLOOD ALCOHOL TEST IN THAT THE DEFENDANT WAS NOT GIVEN A "CHEMICAL TEST" OF BREATH AS MANDATED BY SECTIONS 63-11-5 AND 63-11-30 MISS. CODE ANN. (1972).
Fulton's argument is without merit. The statutes in question allow for reliable methods of testing blood alcohol content in addition to the chemical test or test of a person's breath. The breath test used in this case clearly was authorized by statute and has been held valid by this Court as well as in other jurisdictions.
This Court has consistently stated that the test under this statute raises an issue of admissibility of evidence. Therefore, it is the accuracy, reliability and proper administration of the test which must be shown as proof of intoxication. The concerns of this Court were answered by the City of Starkville when the proof showed that the test had been administered by a properly trained officer, *912 that the machine had been checked and calibrated according to the statutory requirements and that the proper steps had been taken to satisfy the accuracy and reliability of the test. This case is affirmed.

THE FACTS
On March 14, 1990, William Fulton was driving on Highway 25 into the city limits of Starkville. Fulton was stopped for speeding by Police Officer Earl Edison. Suspecting that Fulton had been drinking, Edison transported Fulton to the city jail for a breath test. Fulton agreed to take the Intoxilyzer test.
Fulton's breath was tested for alcohol on the Intoxilyzer 4011-A breath testing machine. The test showed a blood alcohol content (BAC) of .16%. Fulton was charged with violation of Miss. Code Ann. § 63-11-30(1)(c).
At the trial de novo in the Oktibbeha County Circuit Court, Fulton filed a motion to suppress the BAC results in that the test administered was not a "chemical test" as required by statute. Fulton contended that the test was instead a "physical test" and not admissible. The trial court overruled the motion to suppress.
Fulton was found guilty by the jury of having greater than .10% weight volume of alcohol in his blood while operating a motor vehicle. Fulton was fined $500 and assessed court costs. Fulton appeals from this conviction.

DISCUSSION

THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE OF THE DEFENDANT'S BLOOD ALCOHOL TEST IN THAT THE DEFENDANT WAS NOT GIVEN A "CHEMICAL TEST" OF HIS BREATH AS MANDATED BY SECTIONS 63-11-5 AND 63-11-30 MISS. CODE ANN. (1972).
Fulton argues that the test referred to within the statute is a "physical test" rather than a "chemical" test. Miss. Code Ann. § 63-11-5 provides as follows:
Any person who operates a motor vehicle upon the public highways, public roads and streets of this state shall be deemed to have given his consent, subject to provisions of this chapter, to a chemical test or test of his breath for the purpose of determining the alcoholic content of his blood. A person may give his consent to a chemical test or tests of his blood or urine for the purpose of determining the presence in his body of any other substance which would impair a person's ability to operate a motor vehicle. The test or tests shall be administered at the direction of any highway patrol officer, any sheriff or his commissioned deputies, any police officer in any incorporated municipality, or any officer of a state supported institution of higher learning campus police force if such officer is exercising this authority in regard to a violation that occurred on campus property, when such officer has reasonable grounds and probable cause to believe that the person was driving or had under his actual physical control a motor vehicle upon the public streets or highways of this state while under the influence of intoxicating liquor or any other substance which had impaired such person's ability to operate a motor vehicle. No such tests shall be given by any officer or any agency to any person within fifteen (15) minutes of consumption of any substance by mouth... .
Miss. Code Ann. § 63-11-30 (Supp. 1989) provides the penalties for operation of a vehicle with ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood. Section 63-11-19 sets forth the approved methods of testing and states as follows:
A chemical analysis of the person's breath, blood or urine, to be considered valid under the provisions of this section, shall have been performed according to methods approved by the State Crime Laboratory created pursuant to Section 45-1-17 and the Commissioner of Public Safety and performed by an individual possessing a valid permit issued by the State Crime laboratory for making such analysis. The State Crime Laboratory and the Commissioner of Public Safety are authorized *913 to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analysis, and to issue permits which shall be subject to termination or revocation at the discretion of the State Crime Laboratory... .
The State Crime Laboratory shall make periodic, but not less frequently than quarterly, tests of the methods, machines or devices used in making chemical analysis of a person's breath as shall be necessary to insure the accuracy thereof, and shall issue their certificate to verify the accuracy of the same.
In support of his argument that the test performed was a "physical" test and not a "chemical" test, Fulton presented the testimony of Alvin Rosenhan. Rosenhan was accepted as an expert on Intoxilyzer breath testing machines. Rosenhan testified that the test performed was not a chemical test but a physical measurement of the absorption of gases using infrared beams.
Fulton failed to raise issues questioning the accuracy of the test, the reliability of the test, or any factor concerning the competency of the test as proof of intoxication. All of these concerns were addressed in the testimony showing that the officer administering the test had been trained and that the machine had been checked and calibrated according to the statutory requirements.
The question of the admissibility of evidence is not the same as the State's authority to test for alcohol content in the driver. The competency and admissibility of the evidence is a matter largely within the discretion of the trial court. Johnston v. State, 567 So.2d 237, 238 (Miss. 1990).
The Johnston opinion holds:
Under M.R.E. 901, authentication and identification are conditions precedent to admissibility. Generally these serve simply to establish that a matter is what it is claimed to be. However in the illustrations listed for Rule 901, a process or a system may be authenticated or identified when it is shown that the process or system is used to produce a result and that it produces an accurate result. 901(b)(9) Miss.Rules of Evidence.
A chemical analysis of a person's breath, blood, or urine is deemed valid only when performed according to approved methods; performed by a person certified to do so; and performed on a machine certified to be accurate. Certification of the machines must take place at least quarterly. Miss. Code Anno. § 63-11-19 (1972). These safeguards insure a more accurate result in the gathering of scientific evidence through intoxilyzers and are strictly enforced.
Id. The Johnston case was reversed and remanded for failure of proof that the certification of calibration met the requirements of the statute. This case involved the model 4011-A & A S Intoxilyzer.
If the breath test is performed according to the methods approved by the State Crime Laboratory, there is an "assumption of validity" of the test. Estes v. State, 605 So.2d 772, 776 (Miss. 1992). Where there is substantial compliance with the statute there is no error in admitting the test results into evidence. Id.; Williams v. State, 434 So.2d 1340, 1343 (Miss. 1983).
Although Section 63-11-5 speaks of a "chemical test," when read with Section 63-11-30, which uses the term "chemical analysis," it clearly shows that the drafters did not intend the methods of testing to be narrowly limited to only one type test. Section 63-11-5 actually says "chemical test or test of his breath" indicating that the chemical test is not the only valid method which may be used in determining the alcoholic content of the blood. Any one of the three methods listed are sufficient methods of measuring blood alcohol content. Section 63-11-30 clarifies this further by indicating that the tests can be of breath, blood or urine. Obviously "chemical test" includes a breath test. The Intoxilyzer used in the present case meets all the requirements set out in the statute and the result of the test is not invalid because Fulton claims that it was not a chemical test.
A review of other jurisdictions with similar statutes on this issue indicates the same concerns about accuracy and reliability of the test administered. In State of Arizona v. *914 Velasco, 165 Ariz. 480, 799 P.2d 821 (1990), the Arizona Supreme Court, in a discussion of the reliability of the Intoxilyzer machine as a testing device for determining the amount of ethyl alcohol in a breath sample, stated:
The device gives the operator step-by-step instructions on proper operation and invalidates the test if it is incorrectly administered. The device protects itself against radio frequency interference and can also detect and report chemical interference.
Velasco, at 485, 799 P.2d at 826. (emphasis added).
The Velasco Court also noted that "the Intoxilyzer analyzes the breath sample without destroying it... . Several factors may affect the accuracy of the Intoxilyzer test results: random error, radio frequency interference, mouth alcohol, chemical interference, insufficient alveolar samples, and operator error."
Velasco, at 485, 799 P.2d at 826. (emphasis added).
Additionally, in the case of State of Montana v. Christopherson, 217 Mont. 449, 705 P.2d 121 (1985), the Supreme Court of Montana referred to the Intoxilyzer test as a "chemical test" in interpreting Montana's implied consent statute. This case involved questions concerning the Intoxilyzer Model 5000, one of the same type machines authorized by the Mississippi Crime Lab for detection of blood alcohol content in accordance with 63-11-5 and 63-11-30 of the Miss. Code Ann. (1972).
The Montana statute is very similar to Mississippi's. Montana's implied consent statute § 61-8-402(1), (3), MCA, states as follows:
61-8-402. Chemical blood, breath, or urine tests. (1) Any person who operates a motor vehicle upon ways of this state open to the public shall be deemed to have given consent, subject to the provisions of 61-8-401, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of alcohol.
(3) If a resident driver under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the arresting officer as provided in subsection (1) of this section, none shall be given, but the officer shall, on behalf of the division, immediately seize his driver's license. (emphasis in original). The Montana Court stated:
Law enforcement officials have interpreted this statute to require police determination of the type of test to be given, either blood, breath, or urine. When the officer designates a test and the driver refuses that test but asks for another type of test, the officer takes that as a refusal to submit to a chemical test and seizes the driver's license pursuant to § 61-8-402(3), MCA, We agree.
The purpose of § 61-8-402, MCA, is to encourage a person arrested for DUI to submit to a chemical test. The statute provides that the arresting officer is to designate which type of chemical test will be administered... . If the arrested person chooses to take a chemical test other than the test designated by the arresting officer and will not take the designated test, it is still a refusal for which his driver's license will be suspended.
Christopherson, 705 P.2d at 122.
Mississippi utilizes the Intoxilyzer Model 4011-A & A S, and 5000 to test for alcohol content of blood. As previously mentioned, the Mississippi statute is very similar to Montana's. Both statutes refer to three types of tests that may be administered when checking for alcohol content; breath, blood and urine. Both statutes refer to the test of one's breath as being a "chemical" test. We conclude the language, "chemical test or test of his breath," as provided by § 63-11-5 and 63-11-30 Miss. Code Ann. (1972) contemplates the use of an Intoxilyzer machine as a proper means of measuring alcohol content of the blood. As long as accuracy, reliability, and all other factors questioning the competency of the test as proof of intoxication are complied with by administering officers, the proof thereunder is admissible. Admissibility is the ultimate issue to be decided. There is no merit to Fulton's argument.

*915 CONCLUSION
The statutes under the Implied Consent Law allow not only a chemical test or tests of a person's breath but also, other tests of a person's blood or urine for determining alcoholic content. All three methods are valid tests for determining alcoholic content in a person's body which would impair that person's ability to operate a motor vehicle.
The ultimate question is one of admissibility and whether the chosen test meets the statutory requirements of § 63-11-30, as set out in Johnston. Accuracy, reliability and competency of the machine and its operator are still of paramount concern to this Court. These requirements were all established satisfactorily by the City of Starkville in the case sub judice.
CONVICTION OF DRIVING WHILE HAVING GREATER THAN .10% BLOOD ALCOHOL CONTENT AND SENTENCE TO PAY A FINE OF $500.00 AND COST OF COURT AND ASSESSMENTS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., not participating.