**7/1/97**

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00738 COA

*MICHAEL RANSOM A/K/A MICHAEL*

*RAMSON APPELLANT*

*v.*

*STATE OF MISSISSIPPI APPELLEE*

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WILLIAM F. COLEMAN

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: J. CHRISTOPHER KLOTZ

VICKIE GILLIAM

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: DEIRDRE MCCRORY

DISTRICT ATTORNEY: BOBBY DELAUGHTER

NATURE OF THE CASE: CRIMINAL: MURDER

TRIAL COURT DISPOSITION: MURDER: SENTENCED TO SERVE A TERM OF LIFE IN THE CUSTODY OF THE MDOC

MOTION FOR REHEARING FILED:7/14/97

CERTIORARI FILED: 9/4/97

MANDATE ISSUED: 12/17/97

BEFORE THOMAS, P.J., DIAZ, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

Michael Ransom was convicted of murder and sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Ransom's motion for JNOV or, in the alternative, a new trial was denied by the trial court. Feeling aggrieved, Ransom asserts two issues on appeal: (1) whether the trial court erred by failing to compel the presence of Juan Burns, a material witness in the case, to testify for the defendant after Burns had been served with a subpoena by an investigator for the defense, thus depriving the defendant of his Sixth Amendment right to compulsory process, and (2) whether the trial court erred in not granting Ransom's motion for a directed verdict as to the charge of murder and, subsequently, not granting Ransom's motion for JNOV due to the fact that the verdict was against the overwhelming weight of the evidence. We find Ransom's arguments to be without merit and affirm on all issues.

FACTS

Michael Ransom was convicted of the murder of Levi White and sentenced to life imprisonment. At the time of the murder, Ransom was living with Rosie Burns at 727 Evergreen Street in Jackson, Mississippi. The house in which they lived was being rented and maintained by Rosie's mother, Lula White. Also living in the two-bedroom home were Appellant's brother, Christopher; the decedent, Levi White, who was Lula's brother; Lula's adult son, Curtis White; Lula's nephew, Willie Earl White; Lula's adopted daughter, Shumica Bolton; Appellant's two small children; Rosie's son, Juan; and many other grandchildren.

On or about the late evening of July 1, 1994, Lula White discovered that $250 was missing from her purse. Lula indicated to her brother, Levi, that Ransom was the only one in the house that evening that could have taken the money. Acting on this information, Levi went looking for Ransom and subsequently returned to the home with him. Levi questioned Ransom about the money, and Ransom denied that he had taken it. Levi then slapped Ransom and a fight ensued with Willie Earl White joining in on the side of Levi. During the fight, Ransom pulled a knife from his pocket causing Levi and Willie Earl to back off. Ransom then left the premises.

In the early morning hours of July 2, 1994, Ransom returned home and went to the bedroom that he usually shared with Rosie Burns. Rosie was not home on this particular evening, but allegedly, Levi, Willie Earl, and Ransom's daughter, Dominique, were asleep in the room. There is a dispute as to whether Rosie's son, Juan, was also sleeping in the room during the altercation. According to Ransom, he shook Levi because he wanted to clear up the dispute that had occurred earlier. Ransom testified that when Levi woke up, Levi went into his pocket with his hand, and Ransom was afraid that Levi was going to pull a knife. Ransom stated that he then grabbed a two by four and swung it in Levi's direction, striking Levi in the head. At this point, Willie Earl woke up and a struggle ensued between Willie Earl and Ransom. During the struggle, Ransom pulled his knife but was subdued by Willie Earl and other members of the household. Willie Earl testified that he was awakened when he was struck in the head with the two by four and saw Ransom hitting Levi with the board. Ransom does not admit to hitting Willie Earl with the two by four but did testify that he woke Willie Earl up after he hit Levi. After the fight ended, Curtis White went to check on Levi and at that time learned that Levi had sustained an injury to his head. Levi was subsequently transported to the hospital by

ambulance where he died as a result of two blows to the head.

Attorneys for Ransom learned prior to trial that Juan had told his mother and grandmother that he had witnessed the murder, but Lula refused to allow Ransom's attorneys to speak with him. Juan was subsequently subpoenaed to testify but failed to appear. The trial court ruled that Juan had been improperly servedThe trial court ruled that the subpoena was invalid because it was not delivered by the sheriff or his sworn agent, but by an unsworn investigator from the Hinds County Public Defender's Office. and refused to delay the trial to give the defense the opportunity to secure Juan's presence for trial. The trial judge stated that he intended to conclude the trial that day. The trial court subsequently indicated, however, that the trial probably could not be concluded by 5:00 p.m. and would recess at that time. The defense offered to have someone go and get Juan from school and bring him to court. The trial judge told the defense that they could send anyone they wanted as long as the defense had witnesses it could put on in the mean time. The defense indicated that they had other witnesses and would attempt to secure Juan's presence during that time. Apparently, Juan was never produced, and the defense rested it's case with no further mention of Juan's testimony until its motion for JNOV/new trial. The motion was denied.

Ransom's theory of defense was self-defense. Ransom testified in his own behalf but was subsequently convicted of murder.

ANALYSIS

I. WHETHER THE TRIAL COURT ERRED BY FAILING TO COMPEL THE PRESENCE OF JUAN BURNS, A MATERIAL WITNESS IN THIS CASE, TO TESTIFY FOR RANSOM AFTER HE HAD BEEN SERVED WITH A SUBPOENA BY AN INVESTIGATOR FOR THE DEFENSE, THUS DEPRIVING RANSOM OF HIS SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS.

Ransom argues that his constitutional right to a fair trial was violated by the trial court's failure to enforce Juan's subpoena. Ransom contends that an accused has a right "to have compulsory process for obtaining witnesses in his favor . . ." in all criminal prosecutions. *Gray v. State*, 472 So. 2d 409, 412 (Miss. 1985). Ransom argues that the Mississippi Supreme Court has ruled that in order to show that an accused has been denied his compulsory right, the accused must show that there is a colorable need. *Id.* at 413. Colorable need means that the accused must show materiality, relevance and vitalness of a witness's testimony. *Hentz v. State*, 542 So. 2d 914, 916 (Miss. 1989). Ransom also cites to the third circuit which has set up a three prong test for determining whether or not an accused has been denied his compulsory right. *Government of Virgin Islands v. Mills*, 956 F.2d 443, 446 (3rd Cir. 1992). The accused must show: (1) that he was deprived of the opportunity to present evidence in his favor, (2) that the excluded testimony would have been material and favorable to his defense, and (3) that the deprivation was arbitrary and disproportionate to any legitimate evidentiary or procedural purpose. *Id.*

Ransom addresses each prong as follows: (1) Juan could have testified to what he saw and could have named other witnesses in the room at the time. Ransom contends that if the trial court had enforced the subpoena and compelled Juan to testify, the jury may not have found Ransom guilty. (2)

Juan told at least two people that he was present in the room at the time of the killing. Thus, Juan's testimony could have proved essential to Ransom's defense that he acted in self-defense. Ransom argues that he made a diligent effort to discover this evidence before trial but was prevented from doing so by Juan's family. Ransom contends that the only opportunity the defense had to discover the information was to compel Juan's presence and testimony by way of subpoena. (3) Ransom argues, on the one hand, that a judge may not mechanistically apply rules to defeat the ends of justice. *Chambers v. Mississippi,* 93 S.Ct. 1038, 1049 (1973). On the other hand, Ransom argues that the judge's ruling did not comply with the established rules of procedure. Under the Uniform Rules of Circuit and County Court Practice, "the procedures for subpoenas in both civil and criminal matters shall conform to Rule 45 of the Mississippi Rules of Civil Procedure." URCCC 2.01. Rule 45(c) states that "[a] subpoena may be served by the sheriff or by his deputy, or by any other person who is not a party and is not less than 18 years of age, and his return endorsed thereon shall be *prima facia* proof of service . . . ." M.R.C.P. 45(c). Ransom contends that Juan's subpoena was properly filed, issued, and served by a non-party investigator who was over the age of 18 and the return was properly endorsed.

The State responds that the judge's refusal to enforce the subpoena was merely a technical error and does not require reversal. The State contends that a party does not have the right to subpoena anybody and everybody that he wants. The State argues that a party must show that the evidence sought would arguably be in his favor and that Ransom failed to do so. The State points out that Juan's grandmother, Lula, testified on cross-examination that as far as she knew, only one child, "Dominique, the little six or seven month old baby, . . . was who was in the bed with Willie Earl . . . . Nobody was in the bed with Levi." Lula indicated that she did not know why Juan had told his mother that he had been in the room. Furthermore, Willie Earl testified affirmatively that "[w]asn't nobody in there but me, Levi, and the baby." Thus, the State argues that the record leaves substantial doubt as to whether Juan had any knowledge at all about the events in question.

The State also points out that, despite the court's ruling that Juan had been improperly served, the court indicated that the defense could send someone to get Juan. Furthermore, the trial judge eventually acknowledged that the trial could not be concluded in one day and would be recessed at 5:00 p.m. Despite this acknowledgment, the State argues, that the record is silent as to whether the public defender's representative attempted to secure Juan's presence at trial or as to why the overnight recess was not utilized to bring Juan to court. The State points out that Ransom rested his case with no further mention of Juan until Ransom's motion for a new trial.

Ransom correctly states the law as it pertains to a defendant's right to compulsory process, but he fails to convince this court that he was prejudiced by the trial court's failure to enforce the subpoena for Juan. Using the three-prong test that Ransom borrows from the third circuit, we find as follows:

(1) There is no evidence that Ransom was deprived of the opportunity to present evidence in his favor as the trial judge not only permitted Ransom to send someone to get Juan during the course of the trial, but the judge also departed from his earlier declaration that he did not intend for the trial to continue on for another day. The trial judge recessed the trial and allowed the defense to conclude its case the following morning. Ransom makes no showing as to why he did not or could not secure Juan's presence prior to the end of the trial. Ransom makes no other request for enforcement of the subpoena nor does he attempt to move for a continuance. While we understand that the judge had

already ruled that he would not enforce the subpoena, this should not preclude the defense from again attempting to persuade the judge that Juan's testimony was indeed necessary and that the subpoena was properly served. Ransom's inaction following the judge's indication that he could send someone out to retrieve Juan from school leaves this Court with the impression that the defense was either satisfied with the judge's response to its request or later determined that Juan's testimony was not necessary. In either case, we believe the judge's erroneous ruling that the subpoena was unenforceable to be harmless as Ransom was given additional time to secure Juan's presence and failed to do so with no further indication to the court that Juan was refusing to testify. We find it a bit curious as to why Juan's mother would volunteer his whereabouts to the defense, i.e. at school, and then interfere with the defense's attempts to retrieve Juan for trial. If the defense had come back and enlightened the court that Juan could not be compelled to testify without authority of the court, then perhaps we would render a different ruling in this case.

(2) Ransom fails to show that the excluded testimony would have been material and favorable to his defense. All that Ransom can tell us for sure is that Juan told his mother and grandmother that he was in the bedroom during the altercation. As we discussed previously, Lula White, Juan's grandmother, and Willie Earl White testified unequivocally that Juan was not in the bedroom during the murder of Levi White. The defense's assertion that Juan might have been in the room and might have seen something that could help the defense's case simply is not enough especially in light of the fact that, as we indicated in the previous discussion, Ransom was given an opportunity to retrieve Juan from school as well as additional time to secure Juan's presence during the overnight recess. *See Chandler v. State*, 272 So. 2d 641, 643 (Miss. 1973) ("[E]ven where the court has authority to compel the attendance of witnesses, the witnesses' testimony must be material to the issue involved and the party requesting their attendance must not only have process issued, but must make every effort during the trial to have the witnesses present."). We find that Ransom did not sufficiently prove that he made every effort to get Juan to trial nor does Ransom offer any evidence that Juan's testimony could have rebutted the testimony already given by Lula and Willie Earl that Juan was not in the room during the murder.

(3) Finally, while we do find that the judge was in error when he ruled that Juan was not properly served, we do not find that the judge acted arbitrarily or disproportionately. Ransom has failed to demonstrate any prejudice to his case as a result of the judge's error, and we therefore find it to be harmless. *See Goforth v. City of Ridgeland*, 603 So. 2d 323, 326 (Miss. 1992) ("That the trial court may in its discretion have enforced the subpoena is no reason why we must reverse for its failure to do so.").

## II. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING RANSOM'S MOTION FOR DIRECTED VERDICT AS TO THE CHARGE OF MURDER AND SUBSEQUENTLY, NOT GRANTING RANSOM'S MOTION FOR JNOV DUE TO THE FACT THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

Ransom argues that there is absolutely no evidence to prove the indictment's language of deliberate design to effect the death of Levi White. Ransom also contends that there is no evidence to controvert the proposition that Ransom acted out of fear of imminent bodily harm. Ransom points out that he and Willie Earl were the only two people who could testify as to what occurred in the room where Levi was hit. Ransom contends that Willie Earl's testimony was varied and contradictory

in that Willie Earl claimed that he was the first one hit with the board and then retracted that statement and admitted that he was not sure if he was the first to be struck with the two by four. Ransom argues that Willie Earl's testimony indicated that Willie Earl was sure that he was asleep until the moment he was struck with the board. Thus, Ransom argues, Willie Earl had no idea what happened between Ransom and Levi prior to waking up, and therefore Willie Earl cannot dispute Ransom's contention that Levi was reaching for a weapon just prior to Ransom's hitting Levi.

Ransom also points out that his self-defense theory is supported by the fact that Levi was the aggressor in the fight earlier that night. Ransom argues further that the testimony of both Ransom and his brother, Christopher, revealed that Levi was known to carry a knife.

In his arguments above, Ransom is challenging both the sufficiency and the weight of the evidence. A challenge to the sufficiency of the evidence requires consideration of the evidence before the court when made, so that this Court must review the ruling on the last occasion when the challenge was made at the trial level. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). This occurred when the trial court overruled Ransom's motion for JNOV. The Mississippi Supreme Court has stated, in reviewing an overruled motion for JNOV, that the standard of review shall be:

[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Ransom's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Id.* (citations omitted).

The evidence consistent with the guilty verdict must be accepted as true. *Id.* at 778. Considering the elements of the crime along with all the evidence in the light most favorable to the verdict, the evidence is not such that reasonable jurors could only find Ransom not guilty of murder. We find that the trial court properly denied Ransom's motion for a directed verdict.

Ransom also complains that the jury verdict was against the overwhelming weight of the evidence, and he requests a new trial. The Mississippi Supreme Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." *Id.* at 781. *See also Burrell v. State*, 613 So. 2d 1186, 1192 (Miss. 1993) (holding that witness credibility and weight of conflicting testimony are left to the jury); *Kelly v. State*, 553 So. 2d 517, 522 (Miss. 1989) (holding that witness credibility issues are to be left solely to the province of the jury). Furthermore, "the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion." *McClain*, 625 So. 2d at 781 (citing *Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987)). The decision to grant a new trial "rest[s] in the sound discretion of the trial court, and the motion [for a new trial based on the weight of the evidence] should not be granted except to prevent an unconscionable injustice." *Id*. This Court will reverse only for abuse of discretion, and on review will accept as true all evidence favorable to the State. *Id*.

In the present case, the jury heard the witnesses and the evidence as presented by both the State and the defense. The State presented the testimony that Ransom had been in an earlier altercation with the victim and that later that night Ransom returned to the White home, went into the bedroom, awakened the victim, Levi White, and then struck Levi in the head with a two by four. The state medical examiner testified that the blows were of such considerable force that the victim's brain was bruised on the side opposite the side impacted by the two by four. While Ransom testified in his own behalf that he was defending himself, there was no evidence that the victim possessed a weapon of any kind nor was there any evidence that the victim ever attempted to get out of the bed. Ransom's only proof that he was in danger was Ransom's statement that he saw Levi White reach into his pocket. The only eyewitness, Willie Earl White, testified that he saw Ransom hit Levi with the two by four and that when he (Willie Earl) attempted to subdue Ransom, Ransom pulled a knife. The testimony was clearly for the jury to evaluate. The jury's decision to believe the State's evidence and witnesses was well within its discretion. Moreover, the jury was well within its power to weigh the evidence and the credibility of the witnesses' testimony and to convict Ransom. The trial court did not abuse its discretion by refusing to grant Ransom a new trial based on the weight of the evidence. The jury verdict was not so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to promote an unconscionable injustice. The trial court properly denied Ransom's motion for a new trial.

**THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR.**