767 So.2d 286 (2000)
James B. MILLSAP a/k/a James Bryan Milsap, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00540-COA.
Court of Appeals of Mississippi.
September 12, 2000.
*287 Anthony J. Buckley, Laurel, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. James B. Millsap appeals his conviction of possession of more than a kilogram of marijuana, assigning the following issues as error
I. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE DEFENDANT'S STATEMENTS AT THE SCENE JUST BEFORE THE DRUGS WERE FOUND, AS OBVIOUSLY THE POLICE OFFICER HAD PROBABLE CAUSE A CRIME WAS BEING COMMITTED, AND NO MIRANDA WARNINGS WERE GIVEN.
II. THE COURT COMMITTED AN AGEE VIOLATION BY NOT REQUIRING ALL POLICE OFFICERS PRESENT DURING THE DEFENDANT'S INTERROGATION, *288 TO TESTIFY AT THE SUPPRESSION HEARING, AFTER THE DEFENDANT TESTIFIED HE DEMANDED A LAWYER.
III. THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS THE ILLEGAL CONTRABAND AS IT WAS DISCOVERED FROM THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF ARTICLE 3. SECTION 23 OF THE MISSISSIPPI CONSTITUTION AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
IV. THE COURT ERRED IN DENYING THE DEFENDANT'S REQUESTED CONSTRUCTIVE POSSESSION JURY INSTRUCTIONS WHEN THE CONTRABAND WAS FOUND NOT ON THE DEFENDANT'S PERSON BUT IN THE TRUNK OF A RENTAL CAR.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On August 21, 1997, Officer Alex Hodge pulled over a red Ford Taurus traveling at the rate of 75 mph in a 70 mph zone in Jones County. The driver of the vehicle was the appellant, James B. Millsap, and forty-six kilograms of marijuana were found in the trunk of his car. A trial was held on February 23, 1999, and Millsap was found guilty and sentenced to twenty years in the custody of the Mississippi Department of Corrections with eight years suspended and twelve years to serve.
¶ 4. The State's first witness was Officer Alex Hodge, a trooper for the Mississippi Highway Patrol. Lieutenant Tony Sarrow, a lieutenant with the Harrison County Sheriff's Department, was riding along with Officer Hodge on the day in question. Officer Hodge testified that he pulled Millsap over and asked him for his license and registration. Officer Hodge testified that he became suspicious when he noticed that the vehicle was a Hertz rental and Millsap's name did not appear on the rental contract. He asked Millsap if he had any handguns, contraband or dead bodies in the vehicle. Officer Hodge testified that Millsap's response was "Of course not. My father would kill me if I was involved in anything like that." Then Officer Hodge testified that he asked Millsap, "What are you talking about when you refer to that?" and stated that Millsap's response was "You know, drugs and stuff." Then Officer Hodge asked if he could search the vehicle, and Millsap stated that he did not want the vehicle searched because the last time it was searched the police had damaged his vehicle. Officer Hodge testified that he took this statement as an indicator that Millsap did not want him searching his trunk. This caused him to get his patrol dog to do an exterior walk around the vehicle, which resulted in the dog making an aggressive alert to the back of the car by scratching on the trunk. The officer explained that at this point he asked Mr. Millsap if there would be any reason the dog would have indicated on the vehicle or if there were any illegal narcotics in the vehicle. He testified that Millsap's response was "Yes" and after asking how much Millsap responded with "A lot." Officer Hodge then asked what he meant by a lot, and Millsap responded with "Well, it should be between 104 and 106 pounds."
¶ 5. Officer Hodge stated that he handcuffed Millsap and the passenger in the car, Alicia Stone, in order to safely search the car. When he opened the trunk he found two duffel bags filled with a "green leafy substance, compressed and wrapped in clear plastic wrap," later determined to be marijuana with a weight of forty-six kilograms or approximately 101 pounds. Officer Hodge arrested Millsap and brought him to the Highway Patrol Office in Hattiesburg. At the station, Officer Don Sumrall advised Millsap of his Miranda rights and gave him his rights advisement form. Millsap signed the waiver *289 and explained to the officers that he traveled from Severeville, Tennessee to Houston, Texas to pick up the marijuana.
¶ 6. Millsap testified that he was not speeding on the day in question and that he gave a phone number to the officer to verify that he was driving the rental car with his friend's permission. He stated that he did not want the officer to search the car because he had some personal items in the car and that he never stated anything about the trunk or any drugs. He further testified that he was not allowed to observe the dog sniff the vehicle. He also stated that Officer Hodge never asked him if he had any drugs, guns or weapons in the car. Millsap also testified that during the questioning he asked for a lawyer and the officer replied, "Everybody in jail has a lawyer," but did not provide him with one.

ANALYSIS

I. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE DEFENDANT'S STATEMENTS AT THE SCENE JUST BEFORE THE DRUGS WERE FOUND, AS OBVIOUSLY THE POLICE OFFICER HAD PROBABLE CAUSE A CRIME WAS BEING COMMITTED, AND NO MIRANDA WARNINGS WERE GIVEN.
¶ 7. Millsap contends that once Officer Hodge had probable cause that a crime was occurring, when the dog indicated there were drugs in the car, then Hodge should have given the appropriate Miranda warning to Millsap. Millsap attempts to argue that any questioning after Hodge had probable cause to believe that Millsap was involved with criminal activity should be suppressed because the statements were obtained illegally since Millsap had not been read his Miranda warnings. Essentially, Millsap argues that the police are required to deliver the Miranda warnings at such time as they have probable cause for arrest.
¶ 8. The United States Supreme Court has indicated that a traffic stop is more similar to a "Terry stop" than to a formal arrest. Berkemer v. McCarty, 468 U.S. 420, 438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); see also Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court has answered the question as to whether a roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered "custodial interrogation." Berkemer, 468 U.S. at 438, 104 S.Ct. 3138. In Berkemer, the routine stop led to a conviction of operating a vehicle while under the influence of alcohol and/or drugs. Id. at 438, 104 S.Ct. 3138. The Supreme Court held that the prearrest statements were admissible because routine traffic stops did not constitute custodial interrogation for purposes of Miranda. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court explained:
Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). "[T]he stop and inquiry must be `reasonably related in scope to the justification for their initiation.'" Id[.] at 881[, 95 S.Ct. 2574] (quoting Terry v. Ohio, supra, 392 U.S. at 29, 88 S.Ct., at 1884). Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character *290 of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda.
Berkemer, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
¶ 9. In the case at bar, we find nothing in the record to indicate that Millsap should have been given Miranda warnings at any point prior to the time Officer Hodge placed him under arrest. Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Officer Hodges legally pulled Millsap over for speeding. Once Hodge had legally detained Millsap, several facts immediately caused him to become suspicious, provoking his further investigation: (1) Millsap was driving a rented vehicle and his name was not on the contract; (2) the person whose name was on the contract was not in the vehicle; (3) a piece of paper lying on the dashboard with instructions to call a friend's father, who was a deputy sheriff, in case of emergency; and (4) Millsap appeared to be very nervous, hesitated before answering questions and did not look at Officer Hodge when answering the questions. Once Officer Hodge began to investigate further, several other facts indicated to him that something suspicious was going on: (5) the passenger's statement and Millsap's statements had several inconsistencies; (6) when Officer Hodge asked Millsap whether he had any dead bodies, drugs, contraband, or hand grenades in the vehicle Millsap's response focused on drugs.
¶ 10. Officer Hodge was justified and reasonable in his continued investigation, and the situation did not escalate to a custodial setting. Millsap failed to demonstrate that he was subjected to restraints analogous to those associated with a formal arrest at any time between the initial stop and the arrest. Thus, Millsap was not taken into custody for the purposes of Miranda until Millsap was arrested. Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶ 11. Furthermore, the Supreme Court has ruled that the police are not required to deliver the Miranda warnings at the precise moment they have probable cause for arrest. Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court stated that there is no right to be arrested; therefore, the police are not required to guess exactly when they have probable cause and stop an investigation the moment they have sufficient evidence. Hoffa, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).
¶ 12. The traffic stop itself does not constitute an arrest or custodial interrogation requiring Miranda warnings, and the mere fact that the dog indicated there were drugs in the trunk, which gave Officer Hodge probable cause, did not require Officer Hodge to stop and arrest Millsap at that point. The statements Millsap made prior to that point were admissible against him.

II. THE COURT COMMITTED AN AGEE VIOLATION BY NOT REQUIRING ALL POLICE OFFICERS PRESENT DURING THE DEFENDANT'S INTERROGATION, TO TESTIFY AT THE SUPPRESSION HEARING, AFTER THE DEFENDANT TESTIFIED HE DEMANDED A LAWYER.
¶ 13. Millsap argues that during the interrogation he asked for an attorney which was not provided to him; therefore, the confession should have been suppressed. Millsap further maintains that an Agee violation occurred because Lieutenant Sarrow, the officer from the Harrison County Sheriffs's Department who was riding along with Officer Hodge on the day in question, was present during the questioning and was not brought forward to testify.
*291 ¶ 14. The applicable burden of proof was set out in Agee v. State, 185 So.2d 671 (Miss.1966), where the court held that:
[t]he State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959). When an objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing conducted outside the presence of the jury on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury. Lee v. State, supra, is also authority for the proposition that when, after the State has made out a prima facie case as to the voluntariness of the confession and the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. See also Holmes v. State, 211 Miss. 436, 51 So.2d 755 (1951).
Agee, 185 So.2d at 673; see also Abram v. State, 606 So.2d 1015 (Miss.1992).
¶ 15. However, the Mississippi Supreme Court's decision in Agee was rendered in April 1966, two months prior to the United States Supreme Court's seminal Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Therefore, when Agee was decided, there was no requirement that the accused be first affirmatively informed that he did not have to make a statement, that anything he said could be used against him in court, and that he had a right to legal counsel before making a statement in order for a confession to be admissible. The State was only required to show that it had refrained from any kind of coercion or offer of leniency in order for the confession to be admissible. Nicholson v. State, 235 Miss. 273, 108 So.2d 842, 843-44 (1959); Holmes v. State, 56 So.2d 815, 817 (Miss.1952); Newell v. State, 209 Miss. 653, 48 So.2d 332, 339 (1950); Street v. State, 200 Miss. 226, 26 So.2d 678, 679 (1946).
¶ 16. While the principles established in Agee still stand, their importance to an accused have been diminished in light of Miranda. In Abram v. State, 606 So.2d 1015, 1030 (Miss.1992), the Mississippi Supreme Court construed Agee in conjunction with Miranda by holding, "Only those persons who are claimed to have induced a confession through some means of coercion are required to be offered by the State under Agee." As argued by the State, their failure to call Lieutenant Sarrow does not violate the Agee rule. Millsap has not and does not claim that Sarrow made any threats or offers of reward which induced the confession, nor does he claim that Sarrow was the officer from whom he requested a lawyer. Only those persons who are claimed to have induced a confession through some means of coercion are required to be offered by the State under Agee. Abram, 606 So.2d at 1030; Reid v. State, 266 So.2d 21, 26 (Miss. 1972). Since Millsap testified that Officer Sumrall was the officer whom he asked for a lawyer, and Sumrall testified, denying any wrongdoing or any request for a lawyer, Officer Sumrall's testimony, in conjunction with Officer Hodge's, satisfies Agee.
¶ 17. We hold that the State's failure to offer Officer Sarrow did not violate Agee since Millsap never claimed that Sarrow being present had any bearing on his confession. We find the requirements of Agee satisfied, and the confession properly admitted into evidence.

III. THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS THE ILLEGAL CONTRABAND AS IT *292 WAS DISCOVERED FROM THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF ARTICLE 3. SECTION 23 OF THE MISSISSIPPI CONSTITUTION AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
¶ 18. Millsap maintains that his detention went far beyond the allowable scope of a traffic stop and constituted an illegal seizure. Millsap further argues that the search of his trunk was done without consent, probable cause or a warrant constituting an illegal search.
¶ 19. In addressing this issue a review of the fundamentals of the Fourth Amendment of the United States Constitution and search and seizure laws are necessary. Except for a few specifically established exceptions, warrantless searches are per se unreasonable. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, under the automobile exception police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe that it contains contraband or evidence of crime. California v. Acevedo, 500 U.S. 565, 576, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); see also Wyoming v. Houghton, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Thus, Hodge's search of the trunk must be supported by probable cause even though a warrant was not necessary.
¶ 20. A probable cause determination should be based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); see also United States v. Holloway, 962 F.2d 451 (5th Cir.1992). The evidence in support of probable cause "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir. 1990).
¶ 21. A dog sniff does not constitute a search or seizure under the Fourth Amendment. United States v. Seals, 987 F.2d 1102, 1106 (5th Cir.1993). However, once the dog "alerted" to the trunk of the car, probable cause to search the vehicle was established. United States v. Zucco, 71 F.3d 188, 191-92 (5th Cir. 1995) (holding that once a dog had alerted to the interior wall of the van, there was probable cause to dismantle the wall).
¶ 22. Furthermore, "once an officer obtains probable cause to search a vehicle, then probable cause exists to search all compartments of the vehicle and all containers" therein. Seals, 987 F.2d at 1106 (citing California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)). Thus, if officers have probable cause to believe that contraband is in only one part of a car, then they are limited to that area. If, on the other hand, officers have probable cause to believe that contraband is located somewhere in a car, but they don't know exactly where, then they can search the entire vehicle.
¶ 23. Since the dog indicated the trunk of the car, the officer had probable cause to search the entire trunk. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989). Finally, the officer was also justified in opening the bags containing the marijuana, due to his probable cause to believe that drugs were located in the car, which extended to the entire trunk and all containers found therein. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Based on the totality of the circumstances and Hodge's experience and observations, a determination that sufficient probable cause existed and was warranted by the trial court.

*293 IV. THE COURT ERRED IN DENYING THE DEFENDANT'S REQUESTED CONSTRUCTIVE POSSESSION JURY INSTRUCTIONS WHEN THE CONTRABAND WAS FOUND NOT ON THE DEFENDANT'S PERSON BUT IN THE TRUNK OF A RENTAL CAR.
¶ 24. The defense maintains that since the contraband was not found on the person of the defendant and not in plain view but rather in the trunk of a car rented in another's name, a constructive possession instruction was required. The defense argues that the trial court erred in not granting the following constructive possession jury instruction:
The Court instructs the jury that the mere driving of the subject automobile does not constitute an exercise of dominion and control of objects located in the trunk of the vehicle.
¶ 25. This instruction clearly constituted an improper comment on the evidence and was therefore properly refused. It is improper for jury instructions to comment upon particular evidence or the weight of evidence. Duckworth v. State, 477 So.2d 935, 937-38 (Miss.1985); Voyles v. State, 362 So.2d 1236, 1244 (Miss.1978).
¶ 26. The defense also requested the following instruction:
The Court instructs the jury that unless you find from the evidence beyond a reasonable doubt that the defendant exercised dominion and control over the marijuana located in the trunk of the vehicle he was driving at the time in question that it is your sworn duty to find the defendant not guilty.
This instruction was a proper constructive possession instruction; however, it was also properly refused because it does not conform to the facts. The Mississippi Supreme Court explained that in order to have constructive possession:
[t]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry v. State, 249 So.2d 414, 416 (Miss. 1971); See also Wall v. State, 718 So.2d 1107 (Miss.1998).
¶ 27. Constructive possession instructions are properly given as a vehicle whereby the State can prove guilt when either the drugs are not found on the defendant's person or the defendant did not confess. Millsap confessed. There was no need to instruct the jury on constructive possession.
¶ 28. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, EIGHT (8) YEARS SUSPENDED, TWELVE (12) YEARS TO SERVE, AND PAY FINE OF $1,000 IS AFFIRMED. ALL COSTS ASSESSED TO JONES COUNTY.
McMILLIN, C.J., BRIDGES, LEE, MOORE, AND PAYNE, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ. MYERS, J., NOT PARTICIPATING.
IRVING, J., Dissenting:
¶ 29. The majority concludes that Millsap was not entitled to a constructive possession instruction because he confessed to having the contraband. The record does reflect Trooper Alex Hodge's testimony that Millsap confessed. However, my reading of the record also reflects that *294 Millsap denied that he confessed and contradicted Hodge's testimony. This is what is contained in the record regarding Millsap's version as related by Millsap on direct examination:
Q. Let's just tell the jury what you say your side of the story is.
A. Yes, sir.
Q. When you were driving up and approaching that part of the highway where the policeman was parked, did you observe him?
A. Yes, sir. When I was coming across and passing him where he was sitting in the media [sic], I looked down at my speedometer and my speedometer showed I was doing 68 miles an hour in a 70. Upon passing him, I didn't see him pulling out on me, so I turned my right blinker on to try to speed up and get in the right-hand lane with the on-going traffic. I wasn't passing people.
When I turned my blinker on and got ready to switch lanes, that's when I noticed he was already behind me with his lights on. As any American would do, I pulled over as you are suppose to. Upon walking to the car, he asked me for my drivers license and registration. I did make a statement that I had been driving for a while and I hadn't sped any. I had been obeying the law.
Upon handing him my legal drivers license, I handed him the registration and I explained to him that a friend helped me get that car because I didn't have a credit card. You can't pay cash for rental cars anymore. That's when he asked me to step out of the car. He asked me if he could call Mr. Bierbaum to verify that I was using his rental car. And I said, "Yes, sir. I have an 800 number for him at work and I have his home number. You can call him right now."

That's when he totally dropped the investigation of the car and asked me if he could search the car. I said, "No, sir. I have some personals in the car." I never did say anything about the trunk. I never did say nothing about the trunk. I never did say the word drugs to him. Upon me saying no to the search, he had me stand by his car facing his car where I couldn't see the car I was in and he brought the dog out.
At that point the plains clothes [sic] officer that was with him stepped up beside me and he said "That dog is going crazy in the back. What do you have in there?" And at that time I heard the trunk open. The officer before, Hodge, never came and asked me if I had drugs, guns or weapons as he testified. He never did ask me those questions.

And upon opening the trunk, both officers turned their back to me and they were digging through the back of the trunk. I never was read my Miranda rights at the scene. He never did ask me if he could drive my car as he stated. He put me in the car and drove me to the Hattiesburg jail.
Then as the senior officer stated that questioned me, half way through the questioning, I asked him, I said, "I think it's time now that I have a lawyer, sir." And his exact words were, "Everybody in jail has a lawyer" which he stated he never did say. And I do not lie. I asked for a lawyer and I was denied my lawyers [sic] rights. I just think I was done wrong as an American citizen. I think my rights were violated.
¶ 30. On cross-examination, the following occurred:
Q. Did you tell them that you didn't know this [the marijuana] was in your car?
A. No. I didn't say that. They never asked me that question.
Q. Did they question you about these two packages?

*295 A. Yes, sir. They asked me where something that was in the trunk might come from.
Q. And what did you tell them?
A. I said probably in Texas.
Q. Probably in Texas?
A. Yes, sir.
Q. Do you admit or deny that you told them that you knew that these two packages were in the car?
A. At that time of the actual stop or in Hattiesburg?
Q. In Hattiesburg, after they had read you your rights?
A. I will tell you, sir, at the time when they produced all this marijuana, the first thing that went through my head was my little girl in Texas. I was worried about it going on the newscast there. You can imagine her being in high school. They stated that it wouldn't be on the newscasts there. Like I say, halfway through the interrogation, I got more nervous about the way they were interrogating me, and I said, I think it's time I get a lawyer, sir. And that gentleman said, "Everybody in jail has a lawyer" which he denied today. I promise you; I asked for a lawyer and I was denied my lawyers' [sic] rights.
Q. And you heard what the officer testified that you told him you got it in Texas and you were carrying it to Severeville? You heard him testify to that?
A. Yes, sir. I presumed the car.

Q The marijuana.
A Oh, yes, sir. I believe so; yes, sir.
Q You heard him testify about that. Is that true or false?
A. I heard him testify that I said I picked it up in Texas?
Q Right.
A. Yes, sir. I heard him testify to that.
Q. Is that true? Did you tell him that?
A. I presumed that he was talking about the car at that time.

(emphasis added).
¶ 31. Millsap also testified on cross-examination that he did not see the two packages in the trunk of the car when he put the sleeping bag in it.
¶ 32. I admit that Millsap attempted to avoid saying directly and unequivocally that he did not know the contraband was in the trunk, but by the same token, the evidence, in my opinion, does not clearly and unequivocally compel the conclusion that Millsap confessed to knowing of its presence. The State offered proof through the arresting officer that Millsap confessed. However, at trial Millsap denied he was ever asked any questions about knowledge of the contraband in the trunk of the rental car. I believe it was reversible error not to give the constructive possession instruction since this was a rental car with the rental receipt showing that it was rented by another person. The issue of the confession, vel non, remained a disputed fact notwithstanding the trial court's denial of the motion to suppress. I might point out that the officers involved obtained a signed waiver of rights form from Millsap. However, for whatever reason, they failed to get a signed confession. Had they done so, there would not be any question about whether he confessed or not.
¶ 33. The majority acknowledges that the instruction requested by Millsap was a proper statement of the law but finds that the instruction was properly refused because Millsap confessed. I have already discussed the evidence which I believe fails to support the finding that Millsap confessed. Thus, in the absence of a confession, I believe, as stated, that Millsap was entitled to a constructive possession instruction.
¶ 34. It is well-settled law that when contraband is not found on a defendant's person, or as in this case, not in a vehicle owned by the defendant, the State must show that the defendant exercised dominion *296 and control over not only the vehicle, but also the contraband found in it. See, e.g., Hamm v. State, 735 So.2d 1025 (¶ 12) (Miss.1999). In the absence of an admission by Millsap that he knew the contraband was in the trunk of the rental car, the State had to prove that Millsap constructively possessed the contraband. Id. As the majority recognizes, "constructive possession instructions are properly given as a vehicle whereby the State can prove guilt when either the drugs are not found on the defendant's person or the defendant [has] not [confessed]." Majority opinion at 293. Conversely, I can see no reason why a defendant who contends, as does Millsap, that he has no knowledge of contraband found in close proximity to him, is not entitled to a constructive possession instruction.
¶ 35. It is also well-settled law that "where [a] proffered instruction relates to a cental [central] issue in the case which is not covered by any other instruction given to the jury," reversal is required. Guilbeau v. State, 502 So.2d 639, 643 (Miss. 1987) (quoting Harper v. State, 478 So.2d 1017, 1018 (Miss.1985)). Since Millsap's defense was that he did not know the marijuana was in the rental car, it cannot be argued legitimately that the issue of constructive possession was not a central issue in the case. Accordingly, I dissent and would reverse and remand for a new trial for the failure of the trial judge to grant the proffered constructive possession instruction.
KING AND SOUTHWICK, P.JJ., JOIN THIS SEPARATE WRITTEN OPINION.