908 So.2d 783 (2005)
Chad B. SPENCER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01104-COA.
Court of Appeals of Mississippi.
February 15, 2005.
Rehearing Denied May 10, 2005.
Certiorari Denied August 11, 2005.
*784 Dennis Harmon, Columbus, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On April 29, 2003, a jury in the Circuit Court of Oktibbeha County found Chad Spencer guilty of possession of a controlled substance. Spencer was sentenced to serve six years in the custody of the Mississippi Department of Corrections, with two years post-release supervision and ordered to pay a fine of $2,000. Spencer then filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial, both of which were denied by the trial court. Spencer now appeals to this Court asserting the following issues, which we cite verbatim: (1) Does a deputy have the right to arrest someone because he thinks the defendant will commit a traffic violation in the future if left to his own devices? (2) May an officer arrest for careless driving if he did not observe any act and admits what he did see, a damaged mailbox, could have been the result of good driving? (3) May an officer search based on mistakea mistake known at the time of the searchspecifically that the "white powdery substance" was Comet or some other soap? (4) May the deputies move seats to find closed containers, open the containers and, otherwise, search an automobile after the defendant has been patted down, handcuffed and being transported back to jail, or may the deputies move items for further examination based on mere suspicions? (5) May the State claim constructive possession of narcotics for the purposes of surviving a directed verdict motion and jury instructions if it makes no effort to prove ownership of the vehicle and without offering any evidence showing dominion or control of the contraband? In other words, Spencer is arguing unlawful arrest, unlawful search and seizure, and insufficient proof of dominion and control over the controlled substance. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. In the early morning hours of June 30, 2002, a homeowner living along Highway 82 West outside of Starkville awoke to a commotion on the road in front of his house. The homeowner looked out his window and saw that his mailbox had been knocked over. The homeowner also saw a vehicle driving very slowly down the highway. The homeowner went outside to investigate and discovered the vehicle stopped several hundred feet down the road. The vehicle was parked partially on the roadway, and the driver appeared to be asleep inside. The homeowner returned to his house to call the sheriff's department.
¶ 3. Deputy Davis of the Oktibbeha County Sheriff's Department arrived at the scene and observed the damaged mailbox and the parked vehicle. Deputy Davis spoke with the homeowner and then went to investigate the vehicle. As he approached the vehicle, Deputy Davis noticed Chad Spencer was half dressed and apparently asleep across the front seat with his feet hanging out of the driver's window. Deputy Davis woke Spencer and asked for his driver's license. Deputy Davis also observed damage to the front-end and windshield of Spencer's vehicle. Deputy Davis described Spencer as semi-incoherent. Throughout their interaction, Deputy Davis noticed that Spencer was slow to respond to questions and that he avoided *785 eye contact. When questioned, Spencer admitted hitting the mailbox. Suspicious of Spencer's behavior, Deputy Davis called additional deputies to the scene to assess the situation and to give a second opinion. A field intoxilyzer test was conducted on Spencer to determine whether he was intoxicated. The test indicated no alcohol was present in Spencer's system. During the questioning, Spencer refused Deputy Davis's request to search his vehicle. Based on their observations, the deputies ordered Spencer to exit his vehicle and arrested him for careless driving[1] pursuant to Miss.Code Ann. § 63-3-1213 (Rev.2004).[2] Deputies then discovered a pocket knife on Spencer's person when he was searched during his arrest. Spencer gave Deputy Gitchell permission to take the knife from him and to place the knife in Spencer's vehicle. Deputy Davis then took Spencer to the Oktibbeha County Jail.
¶ 4. Meanwhile, Deputy Gitchell had gone to Spencer's vehicle to secure the knife inside. When he opened the vehicle door, Deputy Gitchell observed a white, powdery substance on the floor of the driver's side of the vehicle. Suspicious that the substance appeared to be methamphetamine, Deputy Gitchell began to conduct a search of the vehicle. Deputy Gitchell discovered two handguns, several cellular phones, and a mint container with eight multi-colored pills inside. After finding the pills, Deputy Gitchell continued to search for additional contraband and found a container with what he believed to be the same white, powdery substance from the vehicle floor. Based on this discovery, Deputy Gitchell determined that the substance was probably some type of soap powder and not methamphetamine. Deputy Davis returned to the scene and Deputy Gitchell gave him the mint container which contained the pills. The eight pills in the mint container were later identified by the Mississippi Crime Lab as methylenedioxy methamphetamine; also known by its initials, MDMA, and commonly referred to as ecstasy.

DISCUSSION OF ISSUES

I. WAS SPENCER'S ARREST FOR THE MISDEMEANOR CHARGE OF CARELESS DRIVING LAWFUL?
¶ 5. In his first issue, Spencer argues that his arrest for the misdemeanor charge of careless driving was unlawful. Spencer asserts that according to Mississippi Code Annotated Section 99-3-7 (Rev.2000), his arrest was unlawful because he was arrested for the misdemeanor charge of careless driving, and in order for an arrest based on a misdemeanor to be lawful, the offense must be committed in the arresting officer's presence. Section 99-3-7 provides that ". . . [a]n officer . . . may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence. . . ." Spencer maintains that because the act of careless driving (i.e. hitting the mailbox with his vehicle) did not occur in Deputy Davis's presence, Deputy Davis could not lawfully arrest Spencer without a warrant.
¶ 6. Deputy Davis testified that Spencer admitted hitting the mailbox with his vehicle. *786 However, Spencer points out that Deputy Davis further testified that he did not see Spencer hit the mailbox, and the reason he arrested him was because, based on what he observed, he did not feel that Spencer was capable of handling a vehicle. Deputy Davis also testified that he arrested Spencer because he was concerned that if he let him go, Spencer might get into an accident down the road and kill someone. Spencer argues that this later testimony demonstrates that Deputy Davis arrested him in order to prevent an act, and that an arrest before a crime is illegal.
¶ 7. The State argues that the arrest was lawful based on Williams v. State, 434 So.2d 1340 (Miss.1983) (superceded by Miss.Code Ann. § 63-11-39 (effective July 1, 1983 but repealed 1994)). In Williams, the deputy sheriff was called to the scene of a motor vehicle accident whereupon he observed the position of the vehicles involved, the damage to each, and Williams sitting in the driver's seat of one of the vehicles. Id. at 1344. There was a strong odor of alcohol on Williams's breath, his speech was slurred, and, once the deputy got Williams out of the car, Williams was unsteady on his feet. Id. Williams was then arrested, taken to jail, and later convicted on a charge of reckless driving and driving under the influence. Id. On appeal, the supreme court found that the presence requirement in Section 99-3-7 was satisfied, noting that the basis for the requirement that the offense be committed in the presence of the arresting officer is to avoid mistake. Id. The court held that the physical facts surrounding the accident, and the facts that became apparent to the sight and smell of the deputy, were sufficient under the particular facts of the case to hold that both offenses were committed in the deputy's presence. Id. Furthermore, the court listed general factors which it applied to the specific facts of the case; admission by the arrestee that he was the driver, or identification by a witness of the arrestee as the driver, can satisfy the presence requirement. Id.
¶ 8. In Bayse v. State, 420 So.2d 1050 (Miss.1982), Bayse was convicted of manslaughter by culpable negligence for hitting and killing a child with his vehicle while driving intoxicated. Id. at 1052. After hitting the child, Bayse fled the scene but was later arrested through information from witnesses at the scene of the accident. Bayse admitted to hitting the child and was arrested for the misdemeanor charge of leaving the scene of an accident. Id. On appeal, the supreme court affirmed Bayse's conviction finding that, although the deputy did not witness Bayse hitting the child, the presence requirement was otherwise satisfied by the deputy personally observing the bodies at the scene, gaining information from various witnesses that Bayse's car was involved in the accident, and hearing Bayse's confession that he was involved. Id. at 1053. "Where an officer obtains sufficient facts to establish the corpus delicti of a crime, and he additionally obtains a confession, the `presence' requirement of [Section] 99-3-7 has been met and the officer may arrest the individual for a misdemeanor crime." Id.
¶ 9. In this case and also in Williams and Bayse, the arresting officer responded to the scene and personally observed the effects of the misdemeanor crime. The arresting officer gathered eyewitness information from the scene, and, most significantly, heard a confession from the suspect to further support the arrest. The Supreme Court has made it clear that the presence requirement is contextual and may be satisfied under specific circumstances even though the arresting officer did not physically see the misdemeanor criminal act.
*787 ¶ 10. In this case, Deputy Davis arrived on the scene minutes after the accident. He personally observed the property damage and Spencer's vehicle, and he gathered a statement from the homeowner. Additionally, Spencer admitted to Deputy Davis that he hit the mailbox. Although Spencer now argues any number of possible explanations for lawfully hitting the mailbox, he failed to offer them to Deputy Davis on the scene. Spencer's argument and his supporting case law are not persuasive. The issue before us on appeal is whether the requirements of Section 99-3-7 were satisfied so as to support a lawful arrest, not whether there were sufficient facts to support a conviction. Based on the facts in the record and our case law, we find that the presence requirement of Section 99-3-7 was satisfied. We, therefore, find accordingly that based on the information available to him at the time, Deputy Davis made a lawful arrest of Spencer for the misdemeanor charge of careless driving.

II. WAS THE SEARCH OF SPENCER'S TRUCK AND THE SEIZURE OF METHAMPHETAMINE LAWFUL?
¶ 11. In his next issue, Spencer argues that the search of his truck and the seizure of the methamphetamine were unlawful. Under the automobile exception police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe that it contains contraband or evidence of a crime. California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The evidence in support of probable cause "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir.1990).
¶ 12. As we previously found, Spencer was lawfully arrested for careless driving. Upon his arrest, Spencer consented to allow Deputy Gitchell to place a knife found on his person in the truck. While placing this knife in the truck, the deputy observed, in plain view, a white, powdery substance. Taking into account Spencer's behavior and believing this substance to be methamphetamine, the deputy continued searching Spencer's truck for more contraband, finding a black, tin container which contained pills later determined to be methamphetamine. Although the deputy later determined that the powdery substance was not methamphetamine, his experience with law enforcement agencies led him to believe that the powder was a controlled substance. The deputy also testified that Spencer's behavior was consistent with someone who had been using methamphetamine. Although Deputy Gitchell was unsure whether the pills in the container were methamphetamine, Deputy Davis knew that, based on his experience, those types of containers were commonly used to hold controlled substances.
¶ 13. Regardless of the ultimate determination of the powdery substance, the deputy was well within the law in continuing to search the remainder of the vehicle for contraband upon finding the suspicious substance on the driver's side floor of the truck.

III. WAS THERE SUFFICIENT PROOF OF DOMINION AND CONTROL OVER THE METHAMPHETAMINE?
¶ 14. In his last issue, Spencer argues that the State failed to prove that he exercised dominion and control over the methamphetamine, thereby proving constructive possession. In Curry v. State, 249 So.2d 414, 416 (Miss.1971), the supreme *788 court stated that two elements must be present to demonstrate constructive possession: (1) that the defendant was aware of the presence and the character of the contraband in question, and (2) the defendant was intentionally in possession of it. Although proximity is an essential element of constructive possession, it is not adequate by itself, absent other incriminating circumstances, to prove possession. Id. However, the supreme court also stated that "one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable." Powell v. State, 355 So.2d 1378, 1379 (Miss.1978). After this presumption is rebutted the State must then produce "additional incriminating facts [to] connect the accused with the contraband." Id.
¶ 15. In Buggs v. State, 738 So.2d 1253 (Miss.Ct.App.1999), Buggs owned a house wherein cocaine and drug paraphernalia were found. Buggs owned the home, but presented evidence to overcome the presumption of constructive possession by showing that three other people also occupied his home. Id. at (¶ 23). Subsequently, the State then produced additional incriminating evidence in order to prove that Buggs was in fact in possession and had control over the cocaine. Id.
¶ 16. Although the premises in Buggs was a house, in Fuente v. State, 734 So.2d 284 (Miss.Ct.App.1999), constructive possession involving an automobile was at issue. Fuente was the passenger in a car driven by another man when they were pulled over by the police. The driver indicated that Fuente owned the car. Marijuana was found in the car and Fuente was subsequently indicted for possession. As the owner of the car, Fuente was presumed to have constructive possession of the marijuana; however, Fuente testified that he had loaned his car to the driver the day before they were arrested, giving the driver the opportunity to stash the marijuana without Fuente's knowledge. This Court then stated, "[t]hus, the car was not in the exclusive control and possession of Fuente and, under the rule stated in Powell, additional incriminating facts must connect Fuente with the contraband." Id. at (¶ 18).
¶ 17. Furthermore, in similar cases that have been reversed, other proof was put into evidence to establish that the defendant was not in possession of the contraband. In Fultz v. State, 573 So.2d 689 (Miss.1990), the car in question was owned by the defendant's sister and he denied any knowledge of the drugs found inside the car. The supreme court ruled that the State "failed to prove any additional incriminating circumstances to justify a finding of constructive possesion." Id. at 690. In Ferrell v. State, 649 So.2d 831, 835 (Miss.1995), the supreme court found that as Ferrell was not the owner of the car, the State was then required to show additional incriminating facts to connect Ferrell with the contraband, which the State failed to do.
¶ 18. In the case sub judice, Spencer was the only occupant in the truck at the time of the arrest. Nowhere in the record is it explicitly stated that Spencer owned the car; however, nowhere in the record does Spencer offer any evidence that he did not own the car. Spencer neither testified at trial nor produced witnesses in order to rebut the presumption that he was driving the truck and that he was found to have constructive possession over the methamphetamine. Thus, we find this issue to be without merit.
¶ 19. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIX YEARS IN *789 THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS' POST-RELEASE SUPERVISION AND PAY A $2,000 FINE, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, P.J., MYERS, GRIFFIS AND BARNES, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT A SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND CHANDLER, J.
ISHEE, J., dissenting:
¶ 20. Unable to agree with the majority's decision regarding the issues of whether the search of Spencer's truck was lawful, and whether the State proved constructive possession of the contraband, I respectfully dissent.

I. Whether the search of Spencer's truck and the seizure of the methamphetamine were lawful.
¶ 21. In order to frame my discussion of this issue, I state at the outset that I agree with the majority that the record reflects that the search at issue in this appeal had its genesis as a plain-view search which evolved into a warrantless search conducted pursuant to the automobile exception.
¶ 22. "Under the automobile exception[,] police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe that it contains contraband or evidence of a crime." Millsap v. State, 767 So.2d 286, 292 (¶ 19) (Miss.Ct.App.2000) (citing California v. Acevedo, 500 U.S. 565, 576, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)). The probable cause to support this warrantless search must be based on the totality of the circumstances. Millsap, 767 So.2d at 292 (¶ 19) (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Specifically, "[t]he evidence in support of probable cause `must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search.'" Millsap, 767 So.2d at 292 (¶ 19) (quoting United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir.1990)).
¶ 23. As the majority stated, the deputies had been denied permission to search the vehicle but were only given permission to place Spencer's pocket-knife in the vehicle for "safe-keeping." While placing the knife in the vehicle, Deputy Gitchell noticed a white, powdery substance which he believed to be methamphetamine. This led to a more thorough search which uncovered a black, tin container labeled mints. Even after opening the container, Deputy Gitchell originally believed the contents to be mints until the substance was turned over to another deputy who believed the contents to be a controlled substance.
¶ 24. In this case, Deputy Gitchell based his entire search on the presence of the white, powdery substance. After reviewing the record, which recounts that the driver was under arrest and the vehicle was unoccupied, I conclude that after he made this observation, Deputy Gitchell should have proceeded in the least intrusive means possible when going forward with the warrantless search. This would have meant immediately determining the source of the substance, which was eventually done, or conducting a field test on the powdery substance. The latter option is in reference to the deputy's direct testimony that he was in possession of a field testing kit for controlled substances. I am not suggesting that the field test is required in *790 all instances. However, in this case because it was available on the scene when the white, powdery substance was initially discovered, the deputy should have proceeded with the field test which would have been the least intrusive means possible. This would have conclusively established whether the white, powdery substance, which was in fact innocuous and legal, was contraband. Using the field testing kit, which was available at the scene, to determine whether the substance was contraband would have been more consistent with the totality of the circumstances requirement announced in Gates and Millsap. Furthermore, the deputy was undoubtedly trained in operating the field test kit, and its use would have been more consistent with the spirit of the Fifth Circuit's knowledge and training criteria discussed in Muniz-Melchor. The deputy, however, chose to do neither of these options, but instead proceeded to conduct a complete search of the vehicle, eventually finding the closed container therein. The deputy's conduct neither reflected the full measure of his knowledge and training, nor of the totality of the circumstances. For these reasons, I conclude that the search of Spencer's truck was unlawful.
¶ 25. I emphasize for clarity that this conclusion is not intended to create a new standard for determining the probable cause to conduct a warrantless search. I believe that our well-established standard of viewing the law enforcement officer's observations, knowledge, and training within the totality of the circumstances should remain unchanged. However, based on the facts in this case, the deputy had the means of readily determining, via the field testing kit, whether the white, powdery substance was contraband prior to executing a full and detailed search of the vehicle. This omission was not consistent with the spirit of Gates and Millsap, nor of the knowledge and training elements of the probable cause determination discussed in Muniz-Melchor. I am, therefore, unable to agree that the search was lawful.

II. Whether there was sufficient proof of dominion and control over the controlled substance.
¶ 26. I also disagree with the majority regarding the issue of whether the State proved constructive possession of the contraband in question. The law in this matter has been clear for quite some time. As the majority points out, the Mississippi Supreme Court held in Curry v. State, 249 So.2d 414 (Miss.1971) that two elements must be present to demonstrate constructive possession: (1) that the defendant was aware of the presence and the character of the contraband in question, and (2) the defendant was intentionally in possession of it. Although proximity is an essential element of constructive possession, it is not adequate by itself, absent other incriminating circumstances, to prove possession. Id.
¶ 27. The Supreme Court went even further seven years later in Powell v. State, 355 So.2d 1378 (Miss.1978) holding that where the premises are "not under the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband."
¶ 28. Unlike the Ducksworth[3] case which the State cites, the record reflects an absence of contributing factors in this case to show constructive possession. Applying the two prong test from Curry, I conclude that: (1) ownership of the vehicle was not established, and in the absence of proof of ownership, it remains an open *791 question as to how long Spencer was in possession of the vehicle (i.e. had Spencer leased or borrowed the vehicle some weeks, days, or hours prior to his arrest?); and (2) there is no evidence to show that Spencer was intentionally and consciously in possession of the contraband.
¶ 29. In the case at bar, the only evidence presented was that Spencer was occupying the vehicle in which the contraband was hidden under the seat in a closed container. This evidence establishes proximity, an essential element of the crime, however, I am unable to agree that standing alone it is sufficient to satisfy the Curry test. Therefore, I am unable to agree with the majority that the State's evidence was legally sufficient to support Spencer's conviction for possession of a controlled substance.
KING, C.J., AND CHANDLER, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Spencer was never prosecuted for the charge of careless driving.
[2] "Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving. Careless driving shall be considered a lesser offense than reckless driving." Miss.Code Ann. § 63-3-1213.
[3] Ducksworth v. State, 767 So.2d 296 (Miss.Ct.App.2000).