# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00942-COA

ANTHONY SMITH A/K/A ANTHONY D. SMITH
A/K/A ANTHONY DARREL SMITH

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/26/2022 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON III |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     During a routine traffic stop, Oxford police officers suspected that Anthony Smith was driving under the influence, and a drug dog thereafter gave a positive indication that drugs were in Smith's vehicle.  The officers searched the vehicle and found drugs and a handgun. Following a jury trial, Smith was convicted of possession of a firearm by a felon.  On appeal, Smith argues that the trial court erred by denying his motion to suppress the evidence seized during the search.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In May 2020, Officer Colby Terrell of the Oxford Police Department (OPD) pulled

Smith over on Highway 6 near Old Taylor Road in Oxford. Terrell testified that he observed Smith's Chevrolet Tahoe "veer off the right side of the road." Terrell followed Smith and turned on his dash camera. As they approached Old Taylor Road, Terrell observed the vehicle "start veering off the road on the right side next to the white outer line." According to Terrell's testimony, Smith "did this two or three times while continuing westbound."

¶3.     After observing the vehicle touch the outer white line, Terrell turned on his blue lights and stopped the vehicle. Terrell immediately noticed that Smith seemed "argumentative," "his speech just seemed slow," and "[h]is answers were kind of odd at the time." Terrell told Smith to stay in his vehicle while Terrell ran a check on Smith's driver's license. Terrell testified that OPD's Computer Aided Dispatch (CAD) system identified Smith as a "dangerous person," though the system did not explain why.

¶4.     Shortly thereafter, Officer Jason Dyer arrived at the scene. While Terrell sought clarification of Smith's "dangerous person" designation, Dyer asked Smith to step out of the vehicle. Dyer did so, according to Terrell, so that they "could speak to [Smith] further" and "get[] [Smith] away from the vehicle" for the officers' safety. Dyer and Terrell testified that once Smith was out of his vehicle and "the cigarette was away from his mouth,"[1] they "could smell the odor of intoxicating beverage" on Smith's breath. When asked how much he had to drink, Smith replied unclearly, once stating that he had consumed one to two beers and later seemingly saying that he had consumed four beers. Based on the smell of alcohol and Smith's behavior, statements, and speech, Terrell decided to call in a DUI unit to perform a

---

[1] Smith was smoking a cigarette when Terrell initiated the traffic stop, and there was a heavy smoke in Smith's vehicle.

field sobriety test.

¶5.     While waiting for the DUI unit, Terrell walked his canine partner, Jack, around Smith's vehicle to sniff for narcotics. Jack gave a positive indication for narcotics near the driver's side door. Terrell testified that when Jack "got to the passenger side, . . . he had a major breathing change, which is what [drug] dogs do whenever they [detect] an overwhelming odor of narcotics."

¶6.     Based on Jack's positive alerts, Terrell believed he had probable cause to search Smith's vehicle. Terrell and Dyer searched the vehicle and inside found a Glock handgun, a loaded Glock magazine, a handgun drum, a "misdemeanor amount" of marijuana, marijuana seeds, a marijuana "dugout," and four ecstasy pills.

¶7.     Smith was arrested on charges of possession of a firearm by a felon,[2] DUI, careless driving, possession of drugs and paraphernalia, and failure to provide proof of insurance. A grand jury indicted Smith separately for the gun charge.

¶8.     Prior to trial, Smith moved to suppress the evidence seized during the search, arguing that the police lacked probable cause to stop and search his vehicle. The trial court denied Smith's motion, and Smith proceeded to trial on the gun charge. Smith elected to represent himself at trial with a public defender serving as advisory counsel. Terrell and Dyer testified at trial, and videos from Terrell's dash camera and body camera were admitted into evidence. The jury found Smith guilty, and the court sentenced him to serve ten years in the custody of the Department of Corrections.

---

[2] Evidence at trial established that Smith had a prior felony conviction for shooting into an occupied dwelling.

3

¶9. On appeal, Smith argues that the trial court erred by denying his motion to suppress because the evidence found in his vehicle was the product of an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution. More particularly, Smith argues (1) that Terrell lacked probable cause to initiate the traffic stop; (2) that his roadside detention impermissibly exceeded the scope of the traffic stop; and (3) that Terrell and Dyer lacked probable cause to search Smith's vehicle.

**ANALYSIS**

¶10. A "mixed standard of review" applies to the denial of a motion to suppress. *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006). We review a finding of probable cause or reasonable suspicion de novo. *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999). However, the trial judge's findings regarding underlying "historical facts" will not be disturbed unless they are "clearly erroneous." *Dies*, 926 So. 2d at 917 (¶20). Our "[r]eview of the record is not limited to evidence presented to the trial judge at the suppression hearing; this Court may look to the entire record to determine whether the trial judge's findings are supported by substantial evidence." *Galloway v. State*, 122 So. 3d 614, 669 (¶181) (Miss. 2013).

¶11. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Similarly, Section 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons,

4

houses, and possessions[] from unreasonable seizure or search . . . ." Miss. Const. art. 3, § 23. Evidence obtained as a result of an unconstitutional search is inadmissible at trial. *Green v. State*, 344 So. 3d 854, 857 (¶12) (Miss. 2022).

### I. Terrell had probable cause for the traffic stop.

¶12. Smith first argues that "Terrell's stop of [his] vehicle was not justified at its inception because Terrell lacked sufficient probable cause that a traffic violation occurred." Undoubtedly, "stopping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth] Amendment[], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Thus, a traffic stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter," a traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* Indeed, our Supreme Court has held that "when a police officer personally observes a driver commit what he reasonably believes is a traffic violation, he then has probable cause to stop the vehicle." *Martin v. State*, 240 So. 3d 1047, 1052 (¶16) (Miss. 2017).

¶13. Terrell testified that he pulled Smith over for careless driving, which is simply any driving "in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances." Miss. Code Ann. § 63-3-1213 (Rev. 2022). The Mississippi Supreme Court has held that crossing or "bumping" a fog line gives an officer probable cause to stop the driver for

careless driving. *Martin*, 240 So. 3d at 1052-54 (¶¶17-24). Smith argues that such decisions "interpret the careless [driving] statute too broadly." However, this Court is bound to follow our Supreme Court's decisions. *See, e.g.*, *Beckham v. Beckham*, 296 So. 3d 120, 124 n.4 (¶16) (Miss. Ct. App. 2019). Therefore, we hold that Terrell had probable cause to stop Smith for careless driving.

## II.     The officers had reasonable suspicion to prolong the stop.

¶14.    Next, Smith argues that even if Terrell had probable cause to initiate a traffic stop, Terrell and Dyer unconstitutionally detained him longer than necessary to achieve the stop's purpose. "When an officer observes a traffic violation, he has probable cause to detain that person long enough to issue a traffic citation." *Martin*, 240 So. 3d at 1054 (¶25). "[A] traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket" or citation. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015) (quotation marks and brackets omitted). "[A]n officer's mission includes ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (quotation marks and brackets omitted).

¶15.    Moreover, when an "officer develops reasonable suspicion of additional criminal activity during [a traffic] stop, he may further detain [the vehicle's] occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Martin*, 240 So. 3d at 1054 (¶25) (quoting *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010)).

6

"Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the seizure." *Pack*, 612 F.3d at 352 (quoting *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006)). Reasonable suspicion requires more than a "mere hunch," but "the likelihood of criminal activity need not rise to the level required for probable cause." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)); *see also Wrenn v. State*, 281 So. 3d 838, 842 n.3 (Miss. Ct. App. 2018) (explaining that reasonable suspicion is a "lower standard" and "requires a quantum of proof less demanding than probable cause" (quotation marks omitted)).

¶16. Once Terrell made contact with Smith after witnessing Smith's erratic driving, he noticed Smith's odd speech patterns, suggesting that Smith might be under the influence of alcohol or some other intoxicant. Terrell testified that Smith's "speech seemed slow" and that "[h]is answers were kind of odd at the time." Terrell's body camera footage showed Terrell expressing this concern during the stop.

¶17. In addition, when Terrell checked Smith's driver's license, OPD's CAD system identified Smith as a "dangerous person," albeit without explanation. While Terrell was seeking clarification of Smith's designation as a "dangerous person," Dyer arrived and asked Smith to step out of the vehicle,[3] both to speak with Terrell and for the officers' safety. After getting Smith away from the car where he had been smoking a cigarette throughout the stop,

---

[3] Once an officer has "lawfully detained" a vehicle "for a traffic violation," the officer may require the driver to get out of the car without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 & n.6 (1977) (per curiam).

both officers could smell alcohol on Smith's breath. Moreover, when questioned, Smith admitted that he had been drinking beer.[4] Based on that information and Smith's slow responses, Terrell called a DUI officer to conduct a field sobriety test on Smith.

¶18. Terrell and Dyer were permitted to use "any of [their] five senses" to develop reasonable suspicion or probable cause sufficient to prolong the traffic stop. *Martin*, 240 So. 3d at 1054 (¶27). At minimum, Terrell and Dyer—both relying on their perceptions during conversations with Smith, the smell of alcohol, and evidence of careless driving—had reasonable suspicion to believe that Smith may have been driving under the influence. Those articulable facts provided enough reasonable suspicion to prolong the traffic stop long enough to conduct a DUI investigation. Accordingly, Smith's continued detention was not unreasonable, nor was it unconstitutional.

### III. The officers had probable cause to search Smith's vehicle.

¶19. Finally, Smith argues that Terrell and Dyer lacked probable cause to search his vehicle. But Jack positively alerted for drugs while sniffing Smith's vehicle, giving Terrell and Dyer probable cause to believe there were drugs in the vehicle.[5] *See, e.g.*, *Shelton v. State*, 45 So. 3d 1203, 1209 (¶15) (Miss. Ct. App. 2010) (holding that a "drug-detecting

---

[4] Terrell's written statement says that Smith admitted to having "a beer or two." However, as the trial judge noted after watching Terrell's body camera video, Smith at one point seemed to say that he had consumed four beers, while at another point he seemed to say that he had consumed only one or two beers.

[5] The use of a drug dog within the scope of a valid traffic stop does not implicate Fourth Amendment concerns, even if the officers lack reasonable suspicion or probable cause to believe that drugs are present in the vehicle. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *Jaramillo v. State*, 950 So. 2d 1104, 1107 (¶7) (Miss. Ct. App. 2007).

dog's positive alerts created probable cause" to search the car); *Wade v. State*, 33 So. 3d 498, 507 (¶31) (Miss. Ct. App. 2009) (stating that a drug dog's "positive alerts created probable cause . . . to search [a] car"); *Houser v. State*, 29 So. 3d 813, 817 n.6 (Miss. Ct. App. 2009) (stating that a "drug dog's indication of drugs alone constituted probable cause for the search" of a vehicle). Because the officers had probable cause to search the vehicle, their search of the vehicle was reasonable and lawful.[6] Therefore, the trial judge did not err by denying Smith's motion to suppress.

## CONCLUSION

¶20.    The trial judge did not err by denying Smith's motion to suppress because Terrell had probable cause to initiate a traffic stop for careless driving, Terrell and Dyer developed reasonable suspicion to prolong the stop to include a DUI investigation, and they had probable cause to search Smith's vehicle once Jack alerted them to the presence of drugs in the vehicle. Accordingly, Smith's conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[6] *See Roche v. State*, 913 So. 2d 306, 313 (¶22) (Miss. 2005) ("There is an exception to the warrant requirement in the context of vehicle searches. When probable cause justifies the search of vehicle which police have lawfully stopped, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (quotation marks and citation omitted)); *Spencer v. State*, 908 So. 2d 783, 787 (¶11) (Miss. Ct. App. 2005) ("Under the automobile exception police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe that it contains contraband or evidence of a crime.").